[999 NE2d 524, 977 NYS2d 161]

In the Matter of PAUL MURPHY, Respondent, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant, et al., Respondent.

Argued September 4, 2013; decided October 17, 2013

650

**POINTS OF COUNSEL**

*Eric T. Schneiderman, Attorney General*, New York City (*Brian A. Sutherland, Barbara D. Underwood* and *Steven C. Wu* of counsel), for appellant. I. Paul Murphy's undisputed failure to meet the New York State Division of Housing and Community Renewal's income-affidavit requirement supports the denial of his succession application. (*Matter of Renda v New York State Div. of Hous. & Community Renewal*, 22 AD3d 382; *Matter of Miney v Donovan*, 68 AD3d 876, 15 NY3d 712; *Matter of Meyers v New York State Div. of Hous. & Community Renewal*, 68 AD3d 1518, 14 NY3d 714; *Matter of Cognata v New York State Div. of Hous. & Community Renewal*, 82 AD3d 482; *Taylor v New York State Div. of Hous. & Community Renewal*, 73 AD3d 634; *Matter of Greichel v New York State Div. of Hous. & Community Renewal*, 39 AD3d 421; *Parsa v State of New York*, 64 NY2d 143; *United States v Boyle*, 469 US 241; *Heckler v Community Health Services of Crawford Cty., Inc.*, 467 US 51; *Matter of Gaines v New York State Div. of Hous. & Community Renewal*, 90 NY2d 545.) II. Substantial evidence supports the New York State

Division of Housing and Community Renewal's rejection of Paul Murphy's excuse. (*Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100.)

*Himmelstein, McConnell, Gribben, Donoghue & Joseph*, New York City (*David Hershey-Webb* of counsel), for respondent. I. The courts below properly construed the Mitchell-Lama succession regulations to require granting succession to a lifelong family member given the unique facts of this case. (*Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359; *Jenkins v Fieldbridge Assoc., LLC*, 65 AD3d 169; *Kuppersmith v Dowling*, 93 NY2d 90; *Kahn v New York City Dept. of Hous. Preserv. & Dev.*, 28 Misc 3d 1206[A], 2010 NY Slip Op 51197[U]; *Matter of Meyers v New York State Div. of Hous. & Community Renewal*, 68 AD3d 1518; *Matter of Greichel v New York State Div. of Hous. & Community Renewal*, 39 AD3d 421; *Matter of Callwood v Cabrera*, 49 AD3d 394; *Matter of Gilbert v Perine*, 52 AD3d 240; *Matter of Cognata v New York State Div. of Hous. & Community Renewal*, 2008 NY Slip Op 33595[U], 82 AD3d 482; *Taylor v New York State Div. of Hous. & Community Renewal*, 73 AD3d 634.) II. This Court has repeatedly rejected the mechanistic application of regulations which undermine the purpose of those regulations and compel absurd results. (*Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359; *Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin.*, 15 NY3d 358; *Matter of Cintron v Calogero*, 15 NY3d 347; *Eastside Exhibition Corp. v 210 E. 86th St. Corp.*, 18 NY3d 617; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270; *Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev.*, 10 NY3d 776.) III. The New York State Division of Housing and Community Renewal's rejection of Paul Murphy's explanation for failing to file an income affidavit lacked a rational basis.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Karen M. Griffin* and *Francis F. Caputo* of counsel), for City of New York, amicus curiae. The Appellate Division exceeded the bounds of proper judicial review when it ignored a specific, reasonable regulatory requirement for succession eligibility. (*Kuppersmith v Dowling*, 93 NY2d 90; *Matter of Miney v Donovan*, 68 AD3d 876, 15 NY3d 712; *Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev.*, 10 NY3d 776.)

### OPINION OF THE COURT

Chief Judge LIPPMAN.

This case arises from a determination of the Division of Housing and Community Renewal (DHCR) denying petitioner Paul

Murphy (Murphy) succession rights to a Mitchell-Lama apartment. Because the evidence of Murphy's primary residency was overwhelming, and because there was no relationship between the tenant-of-record's failure to file the income affidavit and the succession applicant's income or occupancy, the agency's determination was arbitrary and capricious.

Murphy is a lifelong resident of an apartment in Southbridge Towers, a housing complex in Lower Manhattan operated under the Limited-Profit Housing Companies Law (Private Housing Finance Law art II [Mitchell-Lama]). Murphy moved into the apartment with his parents when he was one month old, in 1981, and extensive evidence demonstrates that he has continued to live in the apartment ever since. In January 2000, Murphy's parents vacated the apartment, and in 2004, Murphy filed a succession application to succeed to the tenancy.

Southbridge Towers rejected the application and DHCR subsequently denied Murphy's appeal. DHCR based its denial on the fact that Murphy's mother, the tenant-of-record, had failed to file an annual income affidavit listing Murphy as a co-occupant for one of the two years prior to her vacatur in 2000. The agency considered this failure an absolute bar to Murphy's succession eligibility under its regulations. Murphy then filed the instant CPLR article 78 petition in Supreme Court challenging the agency's determination, and DHCR moved to dismiss the proceeding. Supreme Court denied DHCR's motion, annulled the agency's denial of Murphy's appeal, and granted his succession petition (29 Misc 3d 1213[A], 2010 NY Slip Op 51816[U] [2010]). The Appellate Division affirmed (91 AD3d 481 [1st Dept 2012]), and we granted DHCR's motion for leave to appeal (19 NY3d 812 [2012]).

" 'In reviewing an administrative agency determination, [courts] must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious' " (*Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009], quoting *Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 149 [2002]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (*Peckham*, 12 NY3d at 431, citing *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]).

Regulations providing for succession rights to Mitchell-Lama apartments serve the important remedial purpose of preventing dislocation of long-term residents due to the vacatur of the head of household (*see* Notices of Emergency/Proposed Rule Making, NY Reg, Nov. 29, 1989 at 23-29). Succession is in the spirit of the statutory scheme, whose goal is to facilitate the availability of affordable housing for low-income residents and to temper the harsh consequences of the death or departure of a tenant for their "traditional" and "non-traditional" family members (*see Braschi v Stahl Assoc. Co.*, 74 NY2d 201 [1989]; *see also Rent Stabilization Assn. of N.Y. City v Higgins*, 83 NY2d 156 [1993]).

In the event that Mitchell-Lama tenants vacate an apartment, their co-occupants are not automatically entitled to succeed to the tenancy. Under the applicable regulations, succession applicants must make an affirmative showing in order to establish their eligibility.[1] Specifically, they must demonstrate that they qualify as family members or were otherwise sufficiently interdependent with the tenant-of-record; that the unit at issue was the applicant's primary residence during the two years immediately prior to the tenant's vacatur; and that they were listed as co-occupants on the income affidavits filed for the same two-year period (*see* former 9 NYCRR 1727-8.3 [a]).[2]

We have recognized that "[t]he Mitchell-Lama law prescribes strict guidelines for tenant eligibility and succession" (*Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev.*, 10 NY3d 776, 778 [2008]). However, as DHCR noted in connection with the 1991 amendments to its regulations, "these [succession] regulations are not intended to cover all possibilities that may occur but are intended to meet the probable occurrences that may transpire as a result of a tenant's permanent absence from a housing unit and the rights and obligations of those who may claim to be entitled to succeed such tenant" (NY Reg, June 5, 1991 at 21).

In this case, DHCR contests neither Murphy's status as a family member, nor that he lived in the apartment during the

---

1. The dissent's assertion that Murphy's affirmative showing was limited to "shifting explanations for his mother's neglect to file" (dissenting op at 661) income affidavits fails to take into account the extensive record evidence he submitted demonstrating his primary residence in the apartment during the years in question.

2. The relevant regulations were revised and renumbered in 2009. The provisions used herein refer to the regulations in effect in 2004, when the succession application was submitted.

relevant two-year period of 1998-1999. The sole basis for DHCR's denial of Murphy's application was that his mother did not file the requisite income affidavit for 1998, the year prior to Murphy's high school graduation. Given the overwhelming evidence of primary residence, and the absence of any indication that the failure to file was related to Murphy's status as a co-occupant or an income-earner,[3] we hold that it was arbitrary and capricious for DHCR to deny succession on the basis of the failure to file a single income affidavit.[4]

There is no doubt that DHCR has a compelling interest in encouraging the timely filing of income affidavits in order to fairly and efficiently administer the Mitchell-Lama program. Housing companies and supervising agencies like DHCR rely on these affidavits to monitor both the number and aggregate income of occupants, information that is crucial to determining the appropriate amount of rent and to ensuring that tenants remain eligible for the rental subsidy. Accordingly, failure to file income affidavits can result in harsh penalties: the tenant can be charged a surcharge on rent for the applicable year (as occurred here), or can be evicted (*see* former 9 NYCRR 1727-2.6 [a] *and* 1727-5.3 [a] [7]).

In the succession context, however, the principal purpose of the income affidavit is to provide proof of the applicant's primary residence. As stated in the DHCR regulations,

> "Proof of [primary residence] shall be the listing of such person on the annual income affidavit and/or the filing of the Notice of Change to Tenant's family . . . , together with other evidence, such as certified copies of tax returns, voting records, motor vehicle registration and driver's license, school registration, bank accounts, employment records, insurance policies, and/or other pertinent documentation or facts" (former 9 NYCRR 1727-8.2 [a] [5]).

While agency interpretations of their own regulations are generally afforded considerable deference (*see e.g. Matter of Gaines v New York State Div. of Hous. & Community Renewal*, 90 NY2d 545, 548-549 [1997]), "[c]ourts must scrutinize administrative

---

**3.** Contrary to the dissent's contention, in reaching our conclusion, it is unnecessary to accept any of Murphy's mother's explanations for nonfiling.

**4.** In doing so, we do not treat one who fails to file more leniently than one who files. The same principle would apply had the income affidavit been filed, but the 17-year-old's name was omitted for a reason unrelated to his co-occupancy or income, such as inadvertence.

rules for genuine reasonableness and rationality in the specific context presented by a case" (*Kuppersmith v Dowling*, 93 NY2d 90, 96 [1999]; *see also Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359 [1999]). As both Supreme Court and the Appellate Division noted, Murphy provided ample evidence in support of his succession application evincing that he resided in the apartment during 1998 and 1999. Indeed, DHCR does not dispute Murphy's residency for the past 32 years. DHCR instead cites only his mother's technical noncompliance for a single year to justify evicting him from the only home he has ever known.

Notwithstanding the importance of the income affidavit requirement, given the overwhelming evidence of residency provided in this case, and the lack of relationship between the tenant-of-record's failure to file and Murphy's income or co-occupancy, DHCR's decision to deny Murphy succession rights was arbitrary and capricious.

Accordingly, the Appellate Division order should be affirmed, with costs.

READ, J. (dissenting). Petitioner Paul Murphy's application concededly did not comply with a bright-line regulatory prerequisite for succession to state-subsidized housing in the Mitchell-Lama affordable housing program. Yet the majority holds that the Division of Housing and Community Renewal (DHCR)'s decision to enforce its regulations and deny Murphy's application was arbitrary and capricious. In so doing, the majority improperly substitutes its judgment for DHCR's, thereby denying affordable housing to a qualified family[1] on the waiting list. I respectfully dissent.

## I

The Mitchell-Lama Law was enacted to address the "seriously inadequate supply of safe and sanitary" housing for low- and moderate-income families living in the State's urban centers (*see* Private Housing Finance Law § 11; *see also* L 1961, ch 803). Declaring that this housing "emergency . . . necessitat[ed] speedy relief which [could not] readily be provided by the

---

1. The subsidized housing in question is a *two*-bedroom apartment, and Murphy was an unmarried 23 year old when he applied for succession. Currently, the minimum-maximum household size for new admissions and transfers to two-bedroom apartments in a Mitchell-Lama project is two to four persons (*see* 9 NYCRR 1727-2.8).

ordinary unaided operation of private enterprise," the legislature enacted incentives to encourage private housing companies to develop affordable housing (*see* Private Housing Finance Law § 11). Companies such as Southbridge Towers, Inc. (Southbridge), the limited-profit housing company involved in this case, were furnished low-interest mortgage funding for construction and real estate tax exemptions in exchange for providing housing regulated as to rents, profits and tenant selection (*see id.* §§ 11, 11-a, 22—23-c; *see also Matter of City of New York [Rudnick],* 25 NY2d 146, 147-148 [1969] [summarizing provisions of Mitchell-Lama Law]).

DHCR, the agency that oversees state-subsidized Mitchell-Lama developments,[2] enjoys broad authority to implement the law (Private Housing Finance Law § 32 [3]). Pursuant to that authority, DHCR has adopted regulations that require tenants in Mitchell-Lama housing to file annual income statements with the housing company (*see* 9 NYCRR 1727-2.1, 1727-2.4, 1727-2.5 [a]).[3] These sworn statements provide notice of the name, age and income of the apartment's occupants. Every occupant must be listed, regardless of earning status, and every occupant over the age of 18 must sign the affidavit. DHCR may authorize a housing company to commence eviction proceedings against a tenant who fails to file an annual income affidavit (*see id.* 1727-5.3 [a] [7]); such proceedings enjoy priority over those brought against "over-income tenants" (*id.* 1727-5.3 [f]).

The usual way to become a lawful tenant of Mitchell-Lama housing in the first place is to apply to the housing company for admission to a particular development (*see generally* Private Housing Finance Law § 41; 9 NYCRR subpart 1727-1). Because demand far outstrips supply, housing companies are required to maintain waiting lists so as to insure equitable access to apartments as they become available (*see id.* 1727-1.1 [a]; 1727-1.3). The housing company must verify that each applicant meets the income eligibility requirements for Mitchell-Lama housing (*see id.* subpart 1727-2).

---

**2.** Amicus curiae City of New York, through its Department of Housing Preservation and Development (HPD), supervises city-subsidized Mitchell-Lama developments (*see* Private Housing Finance Law § 2 [15]; NY City Charter § 1802 [6] [d]).

**3.** Hereafter, citations to DHCR's regulations are to those in effect in 2004, the year that Murphy submitted his application for succession. These regulations were amended in 2009, but 9 NYCRR subpart 1727-8, which addresses succession, was merely reorganized and renumbered without substantive change.

DHCR has created a narrow exception to this general admission process to permit, under limited circumstances, a family member of a departing tenant of record to succeed to the tenancy and thus displace the next qualified individual or family on the waiting list (*see id.* 1727-8.2 [a] [2], [5]; 1727-8.3 [a]). In order to be eligible for succession, an applicant who is not a senior citizen or disabled must fulfill three specific and independent requirements:

(1) The applicant must be a member of the vacating tenant of record's family;[4]

(2) The applicant must have resided in the apartment as his primary residence (as that term is defined in the regulations[5]) with the tenant of record for at least the two years immediately prior to the tenant's death or vacatur; *and*

(3) The applicant must have been listed on the income affidavit (or notice of change[6]) filed by the tenant of record for at least the two consecutive annual reporting periods immediately prior to the tenant's death or vacatur (*see id.* 1727-8.3 [a]).[7]

---

**4.** As defined in the regulations, "family member" includes certain listed relatives by blood or marriage (e.g., husband, wife, son, daughter, stepson, stepdaughter, etc.), or someone "residing with the tenant in the housing accommodation as a primary or principal residence, who can prove emotional and financial commitment and interdependence between such person and the tenant" (*see* 9 NYCRR 1727-8.2 [a] [2] [i], [ii]).

**5.** "Primary residence" means

"[t]he housing accommodation in which the person actually resides and maintains a permanent and continuous physical presence. *Proof of such residency shall be the listing of such person on the annual income affidavit* and/or the filing of the Notice of Change to Tenant's Family . . . *together with other evidence,* such as certified copies of tax returns, voting records, motor vehicle registration and driver's license, school registration, bank accounts, employment records, insurance policies, and/or other pertinent documentation or facts" (*see* 9 NYCRR 1727-8.2 [a] [5] [emphases added]).

**6.** These are notices that the tenant of record must file with the housing company to reflect any changes in the individuals residing in the apartment (*see* 9 NYCRR 1727-3.6). This provision is not implicated here.

**7.** The actual text of the regulation states that

"if the tenant has permanently vacated the housing accommodation, any member of such tenant's family . . . who has resided with the tenant in the housing accommodation as a primary residence for a period of not less than two years, has been listed on

*(n. cont'd)*

An applicant who does not fulfill each of these three separate requirements is ineligible for succession, and the apartment becomes available to a qualified individual or family on the waiting list.

The third of these three requirements—hereafter, the "income-affidavit requirement"—has been a prerequisite for succession to Mitchell-Lama housing since 1991. In 2009 DHCR undertook a rulemaking to streamline and update its regulations governing the management and supervision of Mitchell-Lama companies. In its response to comments on the proposed rules, which reorganized and renumbered provisions bearing on succession, the agency noted that public comment had "suggested that the new regulation should . . . permit the succession applicant to demonstrate residency in the housing accommodation *through other evidence and not only via the annual certification* or notice of change in family" (31 NY Reg [No. 45] at 10 [Nov. 10, 2009] [emphasis added]). DHCR rejected this approach—now adopted by the majority (*see e.g.* majority op at 653 n 1; *see also id.* at 654 n 3)—explaining that

> "[t]he regulations have always required a succession applicant to provide documentary evidence of primary residence *and* to have been listed on the annual income affidavit for the required period of time (or the notice of change in occupancy, when applicable). The regulations are drafted to protect those who would legitimately succeed as well as to prevent unqualified persons from circumventing the waiting list" (31 NY Reg [No. 45] at 11 [emphasis added]).

In DHCR's view, this requirement provides an additional incentive for tenants of record to submit accurate income affidavits. And housing companies and supervising agencies, like DHCR and HPD, rely heavily on the information in these sworn statements for many purposes; for example, to determine rent and the surcharge in the event the aggregate annual income of all occupants of the apartment exceeds the maximum income limit (*see* 9 NYCRR 1727-4.2); to determine whether occupancy

---

the income affidavit and/or on the [notice of change] . . . immediately prior to the permanent vacating of the housing accommodation by the tenant, or from the inception of the tenancy or commencement of the relationship, if for less than such period[ ], may request to be named as a tenant on the leases" (9 NYCRR 1727-8.3 [a]).

standards are being violated and the tenant should be transferred to a smaller apartment or, conversely, whether the tenant is eligible to be placed on an internal waiting list for a larger apartment (*see id.* 1727-2.8); and to determine whether the tenant remains eligible for Mitchell-Lama housing (*see id.* 1727-5.3 [a] [7]).

Conditioning succession—an agency-created exception to the general admission process—on the filing of accurate income affidavits reflects and reinforces the importance of these documents to the administration of the Mitchell-Lama program. For one thing, it assures that the outgoing tenant of record was income-eligible for residency; otherwise, the successor tenant succeeds to an unlawful tenancy at the expense of a qualified applicant for subsidized housing.

Second, a bright-line rule, such as the income-affidavit requirement, enables a housing company and supervising agencies to administer succession tenancy more efficiently. In this regard, amicus curiae City of New York presents us with a cautionary tale.

Prior to February 1, 2003, HPD's rules provided that the omission of a family member from the income affidavits for the relevant time period created a rebuttable presumption that the apartment was not the applicant's primary residence during that period. This presumption could be refuted by an evidentiary showing to the contrary. To address both the administrative burden created by the rebuttable presumption and the recurring fraud concerning succession to these scarce low-rent Mitchell-Lama apartments, HPD amended its regulations expressly to remove the rebuttable presumption. HPD thus adopted a three-part succession rule comparable to DHCR's (*see* 28 RCNY 3-02 [p]).

Finally, a bright-line rule promotes fairness. Everyone knows that compliance with the income-affidavit requirement is necessary to demonstrate residency (or at least that was the case until today) and may plan accordingly, assured that every applicant must fulfill the same condition. Fair assignment of subsidized housing is supposed to be a central component of the Mitchell-Lama program. Succession, an exception to the general rule of admission, must be strictly enforced to insure the program's integrity, and reserve the benefit of subsidized housing for those who legitimately qualify for it.

## II

For a regulation to be nullified, "[t]he challenger . . . must establish that the regulation is so lacking in reason for its promulgation that it is essentially arbitrary" (*Matter of Versailles Realty Co. v New York State Div. of Hous. & Community Renewal*, 76 NY2d 325, 328 [1990], quoting *Ostrer v Schenck*, 41 NY2d 782, 786 [1977] [internal quotation marks omitted]). DHCR's income-affidavit requirement has a rational basis and is not unreasonable, arbitrary, capricious or contrary to the Private Housing Finance Law, as earlier shown. And, in any event, Murphy does not challenge the regulation's validity. Moreover, he acknowledges that his application did not comply with the rule. Yet the majority concludes that DHCR's enforcement of the income-affidavit requirement against an admittedly noncompliant applicant is arbitrary and capricious.

Why does the majority reach this surprising result? After all, courts are hardly in the habit of faulting administrative agencies for enforcing duly adopted regulations according to their terms. The answer the majority gives—and this is stated three times in the opinion—is that "the evidence of Murphy's primary residency was overwhelming, and . . . there was no relationship between the tenant-of-record's failure to file the income affidavit and [Murphy's] income or occupancy" (*see* majority op at 652; *see also id.* at 653-654, 655); and, relatedly, that "the principal purpose of the income affidavit is to provide proof of the applicant's primary residence" (*id.* at 654). The majority also complains that, in light of the "ample evidence" that Murphy "resided in the apartment during 1998 and 1999," it was arbitrary and capricious for DHCR to deny his succession application based "only [on] his mother's technical noncompliance for a single year to justify evicting him from the only home he has ever known" (majority op at 655).[8]

---

**8.** As noted earlier, "the only home [Murphy had] ever known" is a two-bedroom apartment, and the income affidavits that he began filing in 2000 listed an uncle as an occupant of the apartment. Murphy's application for succession was made jointly with this uncle, who was married to Murphy's mother's sister, a shareholder of another subsidized apartment in the same building. On the appeal of Southbridge's denial of the joint application, DHCR denied the uncle's claim on the basis that the regulations require a showing of a family relationship with the tenant of record, not another claimant; and, in any event, do not include "brother-in-law" in the list of family members qualified for succession (*see* 9 NYCRR 1727-8.2 [a] [2] [i]). The uncle did not appeal.

First, documents such as certified copies of tax returns, voting records, motor vehicle registration, etc. constitute necessary but not sufficient proof of primary residency (*see* 9 NYCRR 1727-8.2 [a] [5]; 1727-8.3 [a]). When reconsidering the succession regulations in 1990, DHCR *explicitly* considered and rejected the proposition—now adopted by the majority—that an applicant for succession should be allowed to demonstrate residency "through other evidence and not only via the annual certification" (*see* 31 NY Reg [No. 45] at 10, discussed at 658, *supra*). The majority is thus impermissibly substituting its policy judgment about what the regulations *should* say for DHCR's, and doing so in a case where Murphy himself never challenged the validity or reasonableness of the income-affidavit requirement. Rather, he argued that he had a good excuse for not complying with it.[9]

Next, "succession applicants must make an affirmative showing in order to establish their eligibility" (majority op at 653). And here, Murphy's "affirmative showing" consisted of shifting explanations for his mother's neglect to file the income affidavits for 1998 and 1999, which DHCR found to be "unavailing." Specifically, Murphy initially based his application for succession on his father's—not his mother's—purported occupancy of the apartment; he asserted that his father permanently vacated the premises in "July 2001," even though his father had not been listed on an income affidavit for years. Murphy also claimed that Southbridge had misplaced the income affidavits for 1998 and 1999.

Some months later Murphy shifted gears, professing that both parents had vacated the apartment in January 2000. Since

---

**9.** Notably, Murphy never took the position that his excuse somehow demonstrated or amounted to undue hardship. At the time he made his application, 9 NYCRR 1725-2.9, "Waiver of rules and regulations," provided that the "[r]ules and regulations may be waived in exceptional circumstances if, in the opinion of the commissioner [of DHCR], their application to a specific case, or under an emergency condition, may be shown to effect undue hardship." This provision was repealed when the succession regulations were reorganized and renumbered in 2009. The nearest analog to former section 1725-2.9 is 9 NYCRR 1700.5, "Waiver of requirements of this Chapter [IV, State-Assisted Housing Constructed by Private Enterprise] and use of alternative procedures." This provision states that

"[t]he requirements of this Chapter may be waived if, in the opinion of the commissioner [of DHCR], their application may be shown to effect undue hardship or the waiver of such requirements or the use of alternative procedures are appropriate to the interests of the housing company, the public, the lien holders, the cooperators, or the tenants."

income affidavits are filed in April for the previous calendar year, this revision of the timeline conveniently meant that the filed income affidavit for calendar year 1997 fell within the two-year period relevant to establishing succession. Murphy also claimed for the first time that the income affidavits for 1998 and 1999 had not been filed because of concerns about unspecified "mismanagement issues" at Southbridge.

Murphy's mother eventually submitted an unsworn statement to DHCR in which she claimed that she did not file these income affidavits because of "corruption" at Southbridge. But she provided no contemporaneous evidence that fears of "corruption" had caused her to refrain from filing, and her explanation contained serious factual inaccuracies and inconsistencies.[10] And, of course, DHCR was aware that in 1997, the Murphy household's reported income was nearly double the maximum allowable limit. As a result, Southbridge had applied a 50% surcharge to the rent—the maximum monetary penalty allowable.

DHCR considered and expressly rejected as a factual matter Murphy's excuse for his mother's failure to file income affidavits for 1998 and 1999. And the record more than adequately supports DHCR's scepticism. Again, the majority impermissibly substitutes its judgment for DHCR's by opining that "there was no relationship between the tenant-of-record's failure to file the income affidavit and [Murphy's] income or occupancy." First, the nature of the "relationship" between neglect to file and the applicant's income and occupancy is not made a test of eligibility anywhere in DHCR's succession regulations. Failure to file is enough, absent a showing of undue hardship (see n 9, supra). And the only way to conclude that, as a matter of fact, no such relationship existed is by accepting the tortured explanations put forward by Murphy and his mother.[11] In any event, DHCR's factual determinations must be upheld so long as any rational basis supports the decision, even if "the evidence is conflicting

---

**10.** Interestingly, one of the corrupt officials about whom Murphy's mother complained pleaded guilty in 2008 to mail fraud charges stemming from her attempt to circumvent DHCR's succession regulations by filing false income affidavits.

**11.** Although the majority insists that "in reaching [its] conclusion, it is unnecessary to accept any of Murphy's mother's explanations for nonfiling" (see majority op at 654 n 3), no reason other than these explanations is apparent from the record to support the otherwise ipse dixit statement that "there was no relationship between the tenant-of-record's failure to file the income affidavit and [Murphy's] income or occupancy."

and room for choice exists" (*Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100, 106 [1987]).

Finally, the majority minimizes the absence of an income affidavit for 1998, calling it mere "technical noncompliance for a single year," and intimates that it is unfair for Murphy to suffer the loss of subsidized housing on account of his mother's decision to skip filing. But the majority itself says that DHCR has "a *compelling* interest in encouraging" tenants to file income affidavits (*see* majority op at 654 [emphasis added]). Moreover, because the tenant of record/head of household files the income affidavit, a decision not to file[12] is inevitably made by someone other than the applicant for succession.

## III

DHCR has an obligation to protect the integrity of the Mitchell-Lama program by insuring that sought-after taxpayer-subsidized apartments are not occupied by unqualified applicants at the inevitable expense of those legitimately entitled to this housing. Its regulations manifest various policy choices made in pursuit of that goal, and more often than not, those choices call for tradeoffs. In the case of the succession regulations, DHCR balanced the competing interests of a tenant of record's family members and low- and moderate-income individuals and families enduring long waits for Mitchell-Lama housing. In the past, we have respected the regulatory policy choices made by housing agencies in the administration of the Mitchell-Lama program; we have recognized that "[t]he Mitchell-Lama Law prescribes strict guidelines for tenant eligibility and succession," which the agency (in that case, HPD) is "statutorily required to enforce" (*Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev.*, 10 NY3d 776, 778 [2008]). This case signals a retreat from such judicial deference, apparently motivated by sympathy for Murphy, who benefits to the detriment of the low- or moderate-income family on the waiting list which otherwise would occupy the subsidized housing to which he now succeeds.

---

12. It is difficult to imagine that a tenant of record in Mitchell-Lama housing could ever simply forget to file the annual income affidavit. This is especially so in a case like this one, where the tenant is a longtime resident (beginning in 1981) with a consistent history of filing these documents until 1998.

Judges GRAFFEO, SMITH and RIVERA concur with Chief Judge LIPPMAN; Judge READ dissents and votes to reverse in an opinion in which Judges PIGOTT and ABDUS-SALAAM concur.

Order affirmed, with costs.