OPINION OF THE COURT
Margaret A. Chan, J.
In this CPLR article 78 proceeding petitioner Jason Olivero, appearing pro se, seeks to reverse the New York City Department of Housing Preservation and Development (HPD) deter *654 mination that denied his succession rights to a Mitchell-Lama apartment. The apartment is located in a building owned by corespondent Jefferson Towers, Inc. Answers and opposition to the petition were filed by both HPD and Jefferson Towers. After oral argument where all parties appeared, petitioner submitted a letter to the court. The unsolicited letter dated November 12, 2013, was not considered in this proceeding. The decision and order is as follows:
In April 2013, petitioner was notified by the management company for his building that Jefferson Towers was instructed by HPD to deny succession rights to him (see City’s answer, exhibit J). The basis for the determination was “[verification of residency and proof of relationship has not been proven. Also, Jason C. Olivero is a current shareholder of apartment 8J in Jefferson Towers.” (City’s answer, exhibit J.) Petitioner pursued an appeal of the denial of succession rights to Administrative Hearing Officer for HPD Francis Lippa (HO Lippa). On June 13, 2013, HO Lippa affirmed HPD’s decision and determined that petitioner was not entitled to succession rights.
Petitioner sought succession to an apartment in Jefferson Towers located at 700 Columbus Avenue, in the City and State of New York. It is undisputed that petitioner began residing in apartment 8J with his parents in 1968 when he was a young child. Around the same time, another family, the Dominguis family, comprising of parents, Jack and Connie, and daughter Christina, began residing in the apartment across the hall—8H. It is also undisputed that petitioner is a named individual on the stock certificate for apartment 8J along with both of his parents. The succession rights petitioner seeks is to the Dominguis family apartment, 8H. Only Jack Dominguis, who is now deceased, is on the stock certificate for apartment 8H.
Petitioner claimed that for over the 30 plus years of being neighbors, his family and the Dominguis family became united by a familial bond. Petitioner proffered that, in 1998, he moved into apartment 8H with Jack and Connie Dominguis, and it became petitioner’s primary residence. Petitioner asserted that his family member status, albeit without a biological link, and residency in the subject apartment have entitled him to succession rights to apartment 8H. Petitioner argued that HO Lippa’s decision was arbitrary and capricious.
HPD and Jefferson Towers argued in favor of HO Lippa’s determination to deny succession rights to petitioner. Respondents argued that HO Lippa properly applied the rules and regula *655 tions concerning succession rights of Mitchell-Lama apartments and that his decision was rationally made as petitioner was not a family member of the Dominguis family. HO Lippa also found that petitioner failed to prove that he resided in the subject apartment as his primary residence for two years prior to vacatur of the legal occupant, in this case, Jack Dominguis (the tenant or tenant/cooperator).
In the context of an article 78 petition, the court must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious (see Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144 [2002]). “Arbitrary action is without sound basis in reason and is generally taken without regard to the facts.” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].) The court must examine whether the particular administrative action should be taken or if the action was without foundation in fact (see Matter of Pell, 34 NY2d at 231).
Introduced in 1955 as article II of the Private Housing Finance Law, the Limited-Profit Housing Companies Law was designed to provide affordable housing, known as Mitchell-Lama housing, for moderate income residents. Mitchell-Lama buildings are governed by the provisions in title 28, chapter 3 of the Rules of City of New York (RCNY). Section 3-02 (p) (3) puts forth the rules regarding the succession rights for family members. That provision states where a tenant of the apartment has permanently vacated, any family member may succeed to possession so long as the family member maintained his or her primary residency with the tenant for a period of not less than two years prior to the tenant’s vacatur (see 28 RCNY 3-02 [p] [3]). The burden of proof is on the family member to show use of the apartment as a primary residence for the required period (id.).
The term “family member” is defined in 28 RCNY 3-02 (p) (2) (ii) (A) as “[a] husband, wife, son, daughter, stepson, stepdaughter, including any adopted children!,] father, mother, stepfather, stepmother, brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, grand[d]aughter, father-in-law, mother-in-law, son-in-law, or daughter-in-law” of the tenant. Petitioner conceded he is not one of these relations to the tenant, but asserted that he was held out to the community at large as the nephew of Jack and Connie Dominguis. *656 The statute precisely considers such a situation by stating: “Any other person residing with the tenant/cooperator in the apartment as a primary residence who can prove emotional and financial commitment and interdependence between such person and the tenant/cooperator.” (28 RCNY 3-02 [p] [2] [ii] [B].) Section 3-02 (p) (2) (ii) (B) further provides that in evaluating the emotional and financial commitment and interdependence the income affidavits filed by the tenant/cooperator for the apartment “shall” be considered. Eight other factors “may” be considered (28 RCNY 3-02 [p] [2] [ii] [B] [a]-[h]). They are: longevity of the relationship; sharing or relying on each other for payment of household expenses; intermingling of expenses; engaging in family functions (e.g. holidays, celebrations, recreational activities, etc.); formalizing legal obligations; holding each other out as family members to the community at large; regularly performing family functions; and engaging in other patterns of behavior that indicate an emotionally committed relationship (see id.).
Notably, the Court of Appeals recently discussed succession of apartments in the Mitchell-Lama context in Matter of Murphy v New York State Div. of Hous. & Community Renewal (21 NY3d 649 [2013]). The Murphy Court stated that while there are strict guidelines for succession, the
“ ‘[succession] regulations are not intended to cover all possibilities that may occur but are intended to meet the probable occurrences that may transpire as a result of a tenant’s permanent absence from a housing unit and the rights and obligations of those who may claim to be entitled to succeed such tenant’ ” (21 NY3d at 653, quoting NY Reg, June 5, 1991 at 21).
The Murphy Court explained that “[succession is in the spirit of the statutory scheme, whose goal is to facilitate the availability of affordable housing for low-income residents and to temper the harsh consequences of the death or departure of a tenant for their ‘traditional’ and ‘non-traditional’ family members” (21 NY3d at 653, citing Braschi v Stahl Assoc. Co., 74 NY2d 201 [1989]).
The relevant statute itself provides that a family member is one that can show an emotional and financial commitment and interdependence, and it further instructs that one must examine the relevant income affidavits to demonstrate such a relationship (see 28 RCNY 3-02 [p] [2] [ii] [B]). The income affidavits *657 are necessary documentation annually submitted in the manner directed by the housing company (see 9 NYCRR 1727-2.4). These sworn statements are signed under the threat of civil or criminal penalties. They set forth the apartment composition including the age, purported relationship to the head of the household, and gross income of each occupant. Those over the age of 18 must sign and swear to the accuracy of the yearly income affidavit. The housing company uses the income affidavits to determine eligibility to the apartment and they provide the basis for determining rent or carrying charges due to the housing company contingent upon the aggregate reported annual family income (see 9 NYCRR 1727-4.1).
Here, petitioner supplied income affidavits beginning in the year 1999 continuously through 2011 that listed him as a resident for the subject apartment—8H. Despite Jack Dominguis being listed as the head of the household, petitioner reported significantly more income than Jack Dominguis for almost all of those years. These 12 consecutive annual income affidavits provide a rational basis for a determination of emotional and financial commitment and interdependence. They also establish an inference of a familial relationship given the other factors enumerated by 28 RCNY 3-02 (p) (2) (ii) (B).
The determination of rent and carrying charges is the most obvious household expense. Rent or carrying charges for a Mitchell-Lama unit is extrapolated using the income reported by all members of the household on the income affidavits. Since petitioner made the majority of the annual reported gross income, the carrying charges increased due to his occupancy. Moreover, for the term of 12 consecutive years Jack and Connie Dominguis reported their relationship with petitioner as nephew. HO Lippa regarded the holding out of petitioner as a nephew to be false and, thus, he did not credit the income affidavits. This is in direct contravention to the statute which considers recognition of being held out as a family member to the community (see 28 RCNY 3-02 [p] [2] [ii] [B] [f]). Notwithstanding that Mitchell-Lama apartments cannot be bequeathed (see 28 RCNY 3-06), the income affidavits suggest a formalization of the relationship here. HO Lippa’s finding that the intention of the Dominguis family was not relevant in determining succession rights is incorrect. The intention of a lawful tenant alone may not be relevant, but in the instant case the intention was manifested in 12 years worth of consecutive income affidavits that only ceased when Jack and Connie Dominguis died. *658 Their intention couched in years of joint filing and other expressions of a familial bond is wholly relevant here.
The other factors listed in the statute (i.e., engaging in and performing family functions and other patterns of behavior that indicate an emotionally committed relationship) were not disputed by HO Lippa, who had no reason to doubt that “the tenant and [petitioner], along with their families, celebrated special and happy occasions together and commiserated with each other on sad occasions.” (Petition, exhibit 1 at 6.) Moreover, there was evidence that petitioner moved into the Dominguis apartment to provide health care services to Jack Dominguis (see petition, exhibits 2, 5). The submissions to the court showed that Jack Dominguis suffered from bipolar disease and, later on, dementia. Sometime in 1998, “[t]he families decided that [petitioner] could be helpful in ensuring that medication was taken, that Jack was fed, safe, and under control.” (Petition, exhibit 2.) HO Lippa’s determination that petitioner was not a Dominguis family member for the purposes of succession was not rational in light of the consistent and purposeful income affidavits and other proof indicating otherwise.
Similarly, HO Lippa’s determination as to petitioner’s residency for two years prior to Jack Dominguis’ vacatur was also not rational. Petitioner asserted that Jack Dominguis left the apartment in autumn 2010 (see petition ¶ 68; City’s answer, exhibit B). HO Lippa found that petitioner failed to prove residency as he failed to prove when Jack Dominguis vacated the apartment (see petition, exhibit A at 7). The 2010 calendar year income affidavit listed Jack Dominguis as the head of the household and petitioner as the only other occupant. There is no dispute that Connie Dominguis died in autumn 2010. For the 2011 calendar year, only petitioner appeared as the sole occupant on the income affidavit.
The Court of Appeals made clear that “[i]n the succession context . . . the principal purpose of the income affidavit is to provide proof of the applicant’s primary residence.” (Matter of Murphy, 21 NY3d at 654.) The income affidavits here indicate that Jack Dominguis vacated in late 2010. Petitioner asserted that Jack Dominguis moved to Connecticut, where Jack Dominguis’ daughter resided. This is a reasonable conclusion given Connie Dominguis’ death in late 2010, also in Connecticut. HO Lippa took issue with the limited documentation beyond the income affidavits that petitioner submitted to establish residency (see petition, exhibit A at 8). This court agrees that *659 the other documentation submitted was limited. However, the Court of Appeals and the statute itself attach significant weight to the relevant income affidavits (see id.; 9 NYCRR 1727-8.2). As to documentation beyond the income affidavits, the statute merely states that “such other evidence . . . may include, without limitation, certified copies of tax returns, voting records, motor vehicle registration, driver’s license, school registration, bank accounts, employment records, insurance policies, and/or other pertinent documentation or facts” (9 NYCRR 1727-8.2 [a] [2] [ii] [emphasis added]). As stated above, it was irrational for HO Lippa to not credit the income affidavits.[1] Additionally, HO Lippa gave no weight to statements regarding residency provided by a longtime resident of the building, petitioner’s father, and petitioner himself. Nor did HO Lippa give any weight to petitioner’s proof of homeowner’s insurance listing only himself and Jack Dominguis for the years 2009 through 2012. As such, HO Lippa’s determinations as to proof of residency were not rational.
Lastly, HPD’s determination to deny succession rights was based on a lack of verification of residency and family member status and because petitioner is a stockholder in his parents’ apartment (see City’s answer, exhibit J). There was no discussion whatsoever by HO Lippa regarding petitioner’s status as a shareholder of another Mitchell-Lama apartment. Given the scarce availability of these apartments it smacks of unfairness to permit petitioner succession rights to one apartment while retaining an ownership interest in another. However, as this issue was not addressed by HO Lippa, the matter shall be remanded to HPD only as to a determination as to succession in light of other ownership interests.[2]
Accordingly, it is hereby ordered that the petition is granted to the extent that the June 13, 2013 order by Administrative Hearing Officer Francis Lippa is annulled; and it is further ordered that the matter shall be remanded to respondent New York City Department of Housing Preservation and Development to make a final determination as to petitioner’s succession *660 rights in light of his other property interest in another Mitchell-Lama apartment.

. HO Lippa did, however, give weight to a 2007 tax return that indicated petitioner resided in apartment 8J. That tax return is outside of the two-year prior residency time frame.

. At the time of submission of the article 78 petition, petitioner indicated his desire to remove his name from the stock certificate of apartment 8J. It is not clear at this time if that was done.