■ WATERSIDE PLAZA GROUND LESSEE, LLC, Appellant, v JOHN G. RWAMBUYA et al., Respondents. [17 NYS3d 387]—

Order, Supreme Court, New York County (Doris Ling-Cohen, J.), entered July 10, 2014, which denied plaintiff's motion for summary judgment, and granted defendants' motion for summary judgment dismissing the complaint, unanimously modified, on the law, to deny defendants' motion for summary judgment and reinstate the complaint, and otherwise affirmed, without costs.

Plaintiff (owner) is the net lessee and owner of 10 Waterside Plaza, a building within a Manhattan residential apartment complex. Defendants John G. Rwambuya and Yunia C. Rwambuya (parents) are the tenants of record of apartment 20-F (apartment) in the building. Defendant Joseph Rwambuya is their adult son (son). Owner seeks to recover the apartment based on its claim that the parents no longer occupy the premises as a primary residence. The parents concede that they no longer occupy the apartment as a primary residence. In fact, defendants all agree that the parents permanently vacated the apartment in 2000. They argue that the son has a right to succession, which under the operative law and agreements is only triggered if the tenants of record have permanently vacated. If the parents continue to use the apartment as non-primary residents, no right of succession is triggered and the owner would have the right to rescind the lease. Thus, while a typical non-primary residence dispute involves tenants claiming that they have a greater nexus to the apartment than is claimed by the owner, in this case defendants maintain that the parents' nexus to the apartment is actually less than owner claims it is. Because we believe that there is an issue of fact as to whether the parents' limited use of the apartment qualifies as a permanent vacatur or merely non-primary use, we hold that the motion court erred in granting defendants' motion for summary judgment dismissing the complaint. The disputed is-

sue of fact, however, supports the motion court's denial of the plaintiff's motion for summary judgment. The building was formerly regulated under Private Housing Finance Law article 2, commonly known as the Mitchell-Lama program. Pursuant to a settlement agreement dated July 26, 2001 (Settlement Agreement), approved by the New York City Department of Housing Preservation and Development, and so ordered by the New York State Supreme Court, the complex was converted to fair market housing. Any tenant of record who elected to accept the terms of the Settlement Agreement (settling tenant) by signing a Tenant Acceptance of Agreement form, obtained certain protections under the Rent Stabilization Law (RSL) that might not otherwise have been available to them, including the limited right to pass on their apartment to certain family members.

Pursuant to Paragraph 8 of the Settlement Agreement, settling tenants are entitled to successive, one year leases that automatically renew each November 1st during the settling tenant's lifetime, provided the tenant is not in default. These renewals are automatic and, as provided for by the settlement agreement, are not actually executed by the settling tenant. Paragraph 19 of the Settlement Agreement provides that "[i]n order to retain the benefits of this [Settlement] Agreement, a Settling Tenant must maintain his/her/their apartment as a primary residence and the failure to so maintain the apartment . . . shall be a breach of this [Settlement] Agreement . . . ." Except as otherwise provided, upon the death of the settling tenant or the surrender of said apartment by the settling tenant, owner is entitled to enter and recover said apartment. Although the rights provided under the Settlement Agreement are personal to the settling tenant, those rights may be passed on to settling tenant's spouse, domestic partner and children, if the individual purporting to have succession rights satisfies the co-occupancy requirements set forth in Paragraph 13 of the Settlement Agreement which are modeled after, and apply the same evidentiary burdens found in, the Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (2). Paragraph 13 states: "In determining entitlement to receive succession rights . . . the criteria, requirements, co-occupancy period (in the apartment as a joint primary residence with Settling Tenant) and evidentiary burdens normally used in rent stabilized contests pertaining to succession rights as exist on the date of this Agreement shall apply; however, with regard to children of the Settling Tenant, the co-occupancy period (in the apartment as a joint primary residence with Settling Tenant) shall be no less than three (3) years immediately preceding the permanent vacatur by the

Settling Tenant. In the event of [sic] a Settling Tenant's tenancy is succeeded to, the successor tenant and Owner shall execute an agreement binding the Owner and successor tenant to the terms of the Lease, renewal (if any) and this Agreement, and such successor shall thereafter be a Settling Tenant."

The parents are settling tenants. They moved into the apartment in 1977 with their then five year old son, Joseph and three other children. The apartment has two-bedrooms. Respondents contend that Joseph (now in his 40's) has lived in the apartment almost his entire life (except while attending college), that he co-occupied the apartment with his parents before they permanently relocated to Uganda and that he remained in the apartment after his parents relocated. Thus, they contend that their son, who was raised in the apartment, is a successor tenant, and is entitled to a lease in his own name.

Owner contends that the son is not qualified for succession rights because his parents breached the Settlement Agreement by failing to maintain the apartment as their primary residence. Owner argues that this breach entitles it to rescind the lease and recover possession of the apartment. Owner claims that the parents never permanently vacated the apartment, but used it on an ongoing, albeit limited, basis. Plaintiff also relies on certain activities by the parents, such as their use of keycards to access the building and other amenities (for example, the laundry room), the existence of utility bills (phone and cable) in their names until 2007, and their receipt of mail at the building. According to owner, these activities show that the parents did not really relocate to Uganda as they claim, but kept two homes.

The parents, now ages 83 (John) and 70 (Yunia), retired after long careers in New York City, the mother as a nurse and the father as a senior budget director at the United Nations. They are natives of Uganda, where they live, having built a home there before they retired. Both parents readily concede that they still visit New York to see their doctors* and visit friends and family, but claim that by at least 2000, they had permanently vacated the apartment with no intention of keeping it as their primary residence. The father testified that he has a Ugandan driver's license and passport. According to both parents, their son continued to reside in the apartment after they moved and when they come to New York for visits, they stay with him in the apartment. With limited exceptions, the

---

* Parents cite the superior medical care available in the United States.

son personally pays the majority of expenses associated with the apartment. Although the parents use their keycards to gain access to the building when visiting and they store some personal belongings in the apartment, they argue that this does not constitute a non-primary use of the apartment, but rather a practical alternative to staying at a hotel. While they also admit that they refer to the apartment as their "home," the parents contend they mean this in a general sense because of fond memories and their son's presence there, and not because they actually still live in the apartment.

It is clear that the parents either have ceased using the apartment as their primary residence or have permanently vacated it, given their statements that they only visit New York for several weeks each year (*see Claridge Gardens v Menotti*, 160 AD2d 544, 545 [1st Dept 1990]). In either event, the parents have no legal right to continue as the lease tenants. If the apartment is no longer the parents' primary residence, then they have breached the residency requirements of the Settlement Agreement. If, on the other hand, the parents permanently vacated the apartment, they are no longer entitled to renewal leases. Under either scenario, the parents no longer have any rights in the apartment because Paragraph 13 of the Settlement Agreement conditions the retention of benefits upon the settling tenant maintaining the apartment as his/her/their primary residence.

The son's claimed right to a lease as a successor tenant is a separate legal issue governed by Paragraph 13 of the Settlement Agreement which incorporates the requirements and terms of Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (1), extending the minimum required co-occupancy period by one year, from two years to three. Paragraph 13 specifically refers to the "evidentiary burdens" normally associated with such claims. Since the parents have vacated the apartment, to qualify for succession rights, the son has the burden of establishing that he jointly co-occupied the apartment with his parents as their primary residence for a period of no less than three years immediately preceding his parents' permanent vacatur (*see Matter of Quinto v New York City Dept. of Hous. Preserv. & Dev.*, 78 AD3d 559 [1st Dept 2010]; *68-74 Thompson Realty, LLC v McNally*, 71 AD3d 411 [1st Dept 2010]). The son's proof that he has maintained the apartment as his primary residence for all of his adult life, including three years before his parents moved to Uganda, is unrefuted (*see Matter of Murphy v New York State Div. of Hous. & Community Renewal*, 21 NY3d 649 [2013]). Although the parents no longer

have rights to the apartment, there are still disputed issues of fact regarding whether at the time the parents moved to Uganda, they permanently vacated the apartment or continued to use the apartment as nonprimary residents. This issue and disputed facts directly affect the son's right (if any) to a successor tenancy. If the parents permanently vacated, then the son would have rights as a successor. If, however, the parents continued to use the apartment as non-primary residents, the son's claim would fail This issue precludes the grant of summary judgment to either side on the issue of whether the son has successor rights.

Plaintiff's argument, that the parents were not qualified to enter into the Settlement Agreement in the first place because of their present claim that they vacated the apartment in 2000 which was not raised below, but raised for the first time in its reply brief, was not considered by us.

We have considered and rejected the plaintiff's remaining arguments. Concur—Friedman, J.P., Acosta, Richter and Gische, JJ.