■ ANTHONY DEROSA, Appellant, v CHASE MANHATTAN MORT-GAGE CORP. et al., Respondents, et al., Defendant. [782 NYS2d 5]—

Orders, Supreme Court, New York County (Marylin G. Diamond, J.), entered July 10, 2002 and November 29, 2002, which, respectively, granted defendant Chase Manhattan Mortgage Corp.'s CPLR 3211 (a) (7) motion to dismiss the complaint, and which, insofar as appealable, denied plaintiff's motion to renew, affirmed, without costs.

In 1998, plaintiff obtained a $192,000 mortgage from Chase Manhattan Mortgage Corp. (the mortgagee) to purchase a cooperative apartment, unit 5J of 250 West 89th Street, New York, New York. In September 2000, plaintiff lost his job and stopped making his mortgage payments. The mortgagee sent plaintiff notices of default and sale of the property by regular and certified mail. While the notices of default misidentified plaintiff's apartment (A5J instead of 5J), and the notices of sale were sent to the wrong zip code (11514 instead of 10024), the record indicates that plaintiff's doorman signed for both certified letters. Chase Manhattan Mortgage Corp. also published notices of the sale of the property in Newsday on February 8, 15 and 22, 2001. The Newsday notices misstated the year of the sale as March 1, 2000, instead of 2001. On March 1, 2001, Chase Manhattan Mortgage Corp. sold the apartment at a public auction. The buyer, Mr. Pesochinsky, agreed to pay $200,000 plus all of plaintiff's maintenance arrears for the foreclosed property.

On March 9, 2001, plaintiff advised Chase Manhattan Mortgage Corp. that he had the funds to pay off his mortgage. However, according to the resident ledger for the coop, plaintiff had made no maintenance payments since July 24, 2000. Plaintiff alleges in his complaint that on March 9, 2001, he was notified, for the first time, that his apartment had been sold.

Plaintiff then commenced this action against Chase Manhattan Mortgage Corp. to annul the sale and to compel the mortgagee to allow him to redeem his stock. Chase Manhattan

Mortgage Corp. moved to dismiss plaintiff's complaint pursuant to CPLR 3211 (a) (7). In support of its argument that the IAS court was statutorily disqualified from presiding over the motion, the dissent asserts that the court was required to disclose its interest in JP Morgan Chase, because "the only way to have a financial interest in Chase Manhattan Mortgage Corp. is to own JP Morgan Chase stock." However, the caption on all of the papers submitted to the motion court named Chase Manhattan Mortgage Corp. as the defendant, and there is no indication that the court was aware of any affiliation between that company and JP Morgan Chase. In addition, plaintiff did not make a motion for the IAS court to recuse itself.

In the first order appealed, the IAS court granted Chase Manhattan Mortgage Corp.'s motion. It concluded that the misidentification of the zip code did not nullify the notices of default and sale. The court further concluded that Uniform Commercial Code § 9-504 (3) does not require actual notice of sale, only that the secured creditor took reasonable steps to provide such notification. In the second order appealed, the IAS court denied plaintiff's application for reargument, deemed a motion for renewal, rejecting plaintiff's argument that publication of the sale in Newsday was insufficient to cover prospective purchasers in the New York City area. This appeal ensued.

On August 4, 2003, when the record on appeal was filed by the plaintiff, the caption of this matter was altered to read "JP Morgan Chase, sued herein as Chase Manhattan Mortgage Corp." All of the submissions subsequently filed with this Court bore the altered caption. JP Morgan Chase, a party never served, became the lead defendant, with all of the attendant ramifications. Also, the record plaintiff filed with this Court includes 10 pages of excerpts from the trial court's personal financial disclosure forms and election committee forms. These pages, which were denominated in the record on appeal only as financial forms, were not included among the papers plaintiff submitted to the trial court.

On appeal, plaintiff argues that the IAS court was statutorily disqualified from deciding the motions because it failed to disclose to the parties that it owned JP Morgan Chase stock. Ordinarily, this Court acquires jurisdiction over matters determined adversely to the appellant in Supreme Court once a notice of appeal is filed (CPLR 5701). However, this Court has authority to reach the merits of an argument first made on appeal, but only when the argument is clearly supported by facts already in the record (*Matter of New Hampshire Indem. Co. v Vranica*, 294 AD2d 287 [2002] [court entertained insurer's argu-

ment regarding omission raised for first time on appeal because it was readily apparent on the face of the record]; *Chateau D'If Corp. v City of New York*, 219 AD2d 205, 209 [1996], *lv denied* 88 NY2d 811 [1996]; *Merritt Hill Vineyards Inc. v Windy Hgts. Vineyard, Inc.*, 61 NY2d 106 [1984] [Appellate Division's general authority, sua sponte, to search the record on appeal in reaching a determination]). Here, the facts necessary to support plaintiff's position that the IAS court was statutorily disqualified were not part of the record which was before the IAS court.

What is clear from the trial court record is that this action was brought by plaintiff against Chase Manhattan Mortgage Corp. and not JP Morgan Chase. There is no allegation that the IAS court had stock in Chase Manhattan Mortgage Corp. Significantly, no motion was ever made to the IAS court seeking recusal based upon the court's ownership of JP Morgan Chase stock or stock of any other corporation.

Given that Chase Manhattan Mortgage Corp. and JP Morgan Chase are two separate corporate identities, there is no basis for a finding that the IAS court was statutorily disqualified from deciding the motions before it (*see* Advisory Comm on Judicial Ethics Op 04-17 [2004]). We reject the dissent's contentions that reliance upon this advisory opinion is improper. The ethics opinion, though not binding, provides important guidance to courts faced with determining whether recusal is mandatory. Specifically, the ethics opinion states that a court should not have what could become an onerous burden of investigating its interests in any corporate entities which might be related to those before it, as was the case here. Further, when reviewing an order on appeal, this Court examines the papers and other evidence upon which the order appealed was founded (CPLR 5526), none of which name JP Morgan Chase as a defendant. Additionally, there was no motion to amend, a prerequisite to the substitution of JP Morgan Chase for Chase Manhattan Mortgage Corp. as a defendant on the appeal (CPLR 305 [c]; *Indemini v Beth Israel Med. Ctr.*, 2004 NY App Div LEXIS 1634 [1st Dept, Feb. 10, 2004]).

On the merits of a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), the IAS court must determine whether, assuming that the allegations in the complaint are true, they state a cause of action upon which relief may be granted (*see Becker v Schwartz*, 46 NY2d 401, 408 [1978]). Here, plaintiff sought to annul a foreclosure sale. He alleged that defects in the notices and the amount of the sale precluded its enforcement

under UCC article 9 (*see* UCC 9-504[1] [requiring commercially reasonable disposition of property]). Because we agree with the motion court that, even assuming the truth of all of plaintiff's protestations, the sale was conducted in a commercially reasonable manner as a matter of law, we affirm the determination to grant defendant mortgagee's motion to dismiss the complaint.

Plaintiff's first challenge is based upon his purported failure to receive personal notice of the auction. However, it is undisputed that Chase Manhattan Mortgage Corp. sent plaintiff notices of the default and sale by regular and certified mail. Despite the errors in addressing these notices, the mortgagee also provided evidence that plaintiff's doorman signed for the notification letters, proving, at the least, that the letters reached plaintiff's building. Even accepting plaintiff's contention that he never actually received these notices, this error would not afford a basis for setting aside the sale of the collateral (*see generally Raschel v Rish*, 69 NY2d 694, 697 [1986] [actual receipt of papers is generally irrelevant to whether service is proper]). Moreover, cases interpreting UCC 9-504 [3] have not required a secured party to conclusively establish that it provided the debtor with actual notice of a foreclosure, only that the secured party took reasonable steps to provide such notice, as here, by sending letters to the debtor by certified and regular mail (*Morris v Citibank*, 1999 WL 461161, 1999 US Dist LEXIS 10169 [SD NY, July 6, 1999], *affd sub nom. Troni v Citibank, N.A.*, 216 F3d 1073 [table; text at 2000 WL 821857, 2000 US App LEXIS 14616 (2d Cir, June 22, 2000)] [service by certified and regular mail deemed proper and whether plaintiffs actually received notices immaterial to determining commercial reasonableness]; *Thornton v Citibank N.A.*, 226 AD2d 162 [1996], *lv denied* 89 NY2d 805 [1996] [same]; *Dougherty v 425 Dev. Assoc.*, 93 AD2d 438 [1983] [upholding notice of sale as a matter of law]). It also bears noting that a mortgagor who has not made a payment for six months has reason to anticipate a foreclosure action.

Plaintiff next argues that the publication of the sale in Newsday violated RPAPL 231 (2) (a), which requires that publication take place in the same county where the property is located. However, the choice of paper would not, by itself, make the sale commercially unreasonable, and plaintiff has not otherwise shown that any other claimed defect precluded prospective bidders from attending the sale (*see Amresco New England II v Denino*, 283 AD2d 599 [2001] [failure to provide proper notice under RPAPL 231 did not require that a sale be vacated, absent a showing that any prospective bidders were

---

1.   This section is presently codified at UCC 9-610.

prevented from attending]; *Buttermark Plumbing & Heating Corp. v Sagarese*, 119 AD2d 540, 540-541 [1986], *lv denied* 68 NY2d 607 [1986] [sale upheld despite single publication of postponed date where no evidence of irregularity that would have inhibited prospective bidders' attendance]). In addition, we find that the error in the published notice as to the year of the sale, stating a year which antedated the circulation of the newspaper, was an error which would have been apparent on its face to any prospective purchaser.

Finally, plaintiff challenged the sale based upon the mortgagee's acceptance of $200,000 plus outstanding maintenance for the collateral. Plaintiff contends, without any support, that this was only 45% of the market value of the property. UCC 9-507 (2)[2] expressly provides: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." Courts have consistently declined to disturb a foreclosure sale upon a challenge to amount recovered for the collateral, except in the narrow circumstance where the price alone is so inadequate as to shock the court's conscience. This is not such a case (*Thornton*, 226 AD2d 162, 163 [1996], *supra* [noting that foreclosure sales often result in prices substantially less than market value]; *Crossland Mtge. Corp. v Frankel*, 192 AD2d 571 [1993], *lv denied* 82 NY2d 655 [1993] [sales price of $55,000 for property with market value of between $160,000 and $200,000 upheld]; *Buttermark*, 119 AD2d at 540-541, *supra* [sale at 30% of defendants' uncorroborated opinion as to fair market value upheld]; *cf. Dougherty*, 93 AD2d 438, 447 [1983], *supra* [question as to commercial reasonableness where property sold for less than 50% of purchase price one year earlier]).

Despite plaintiff's protestations to specific aspects of the instant sale, we find that the totality of the record establishes that it was conducted in a commercially reasonable manner (*Orix Credit Alliance, Inc. v Blevins*, 1993 WL 177940, 1993 US Dist LEXIS 6489 [SD NY, May 17, 1993]). We reach this conclusion upon our view of "the aggregate of circumstances . . . rather than specific details of the sale taken in isolation" (*In re Zsa Zsa Ltd.*, 352 F Supp 665, 670 [SD NY 1972], *affd* 475 F2d 1393 [1973]). "The facets of manner, method, time, place and terms cited by the [UCC] are to be viewed as necessary and interrelated parts of the whole transaction" (*id.*).

Defendant mortgagee has established that it made reasonable

---

2. This section is presently codified at UCC 9-627 (a).

attempts to notify plaintiff that it intended to sell the property at a public auction, and it published notice of the sale in Newsday, a newspaper of broad circulation. The notice set forth the day, time and place of the sale, as well as the collateral and the terms of the sale. The sale complied with the notification provisions in UCC 9-504 (3) and was otherwise conducted in a commercially reasonable manner under UCC 9-507 (2). Accordingly, we affirm the motion court's determination to grant defendant Chase Manhattan Mortgage Corp.'s motion to dismiss the complaint. Concur—Mazzarelli, J.P., Ellerin, Friedman and Gonzalez, JJ.

Andrias, J., dissents in part in a memorandum as follows: Because the motion court did not disclose its interest in Chase to the parties, under the express terms of Judiciary Law § 14, it was without power to hear the case and the orders appealed from are null and void. Thus, this Court should not address the merits of the motions, but simply remand the matter to Supreme Court for determination by another justice.

The majority ignores the well-established principle that a court's lack of subject matter jurisdiction, which is the case where a judge is statutorily disqualified, is generally not waivable and may be challenged for the first time on appeal (*Murray v State Liq. Auth.*, 139 AD2d 461 [1988], *lv denied* 72 NY2d 810 [1988]; *see also Matter of Fry v Village of Tarrytown*, 89 NY2d 714, 718 [1997] [such issue " 'may be [raised] at any stage of the action, and the court may, *ex mero motu* [on its own motion], at any time, when its attention is called to the facts, refuse to proceed further and dismiss the action' "]).

Aside from taking the opportunity to seek to impose sanctions upon plaintiff and his counsel for raising for the first time on appeal the disqualification issue, an issue he discovered for the first time after the motion court had decided the subject motions, the majority affirms what are clearly null and void orders.

The issue of the changed caption was fully raised by Chase in its respondent's brief (point IV, at 21-24). However, it argued not that JP Morgan Chase did not have a financial interest in this action, but that, even if Justice Diamond and her husband do in fact own JP Morgan Chase stock, that alone is an insufficient basis for judicial disqualification because "JP Morgan Chase Bank has a very large number of outstanding shares and it is highly unlikely that Judge Diamond's and/or her husband's ownership of shares would rise to the level as being deemed a 'substantial interest' in the corporate entity" (respondent's brief, at 23-24). Chase went on to argue that plaintiff, who relied upon the Judge's 2001 financial disclosure statement, had not

demonstrated that she actually owned stock in JP Morgan Chase at the time of her ruling and that plaintiff failed to demonstrate how JP Morgan Chase and its stock could possibly be affected by any ruling on a foreclosure sale involving a $192,000 coop loan (*id.* at 24).

Implicit throughout Chase's argument is its acknowledgment of the undisputed fact that defendant-respondent Chase Manhattan Mortgage Corp. is a wholly owned subsidiary of JP Morgan Chase and that the only way to have a financial interest in Chase Manhattan Mortgage Corp. is to own JP Morgan Chase stock. Plaintiff's appellate caption clearly identified defendant as "JP Morgan Chase, sued herein as Chase Manhattan Mortgage Corp." and it would be disingenuous of us to now claim to have been misled.

The issue was fully argued by Chase and responded to by plaintiff, who relied in part upon the Second Circuit's decision in *Chase Manhattan Bank v Affiliated FM Ins. Co.* (343 F3d 120 [2003], *cert dismissed* — US —, 124 S Ct 1652 [2004]) (reply brief point IV), copies of which decision were provided to the bench. There is no doubt that Chase, in whatever guise, has a financial interest in this litigation, however small, and that Justice Diamond's undisputed ownership of JP Morgan Chase stock, of which we may take judicial notice, disqualified her pursuant to Judiciary Law § 14 and deprived her of jurisdiction, an issue that can be raised for the first time on appeal.

Such statutory disqualification is not addressed to the motion court's discretion, but is mandatory. Thus, any reliance upon a nonbinding advisory opinion of the Advisory Committee on Judicial Ethics (Op 04-17) rendered 20 months after Justice Diamond's original decision and five months after the appeals were argued, which is also not part of the record before us and was not brought to our attention by any party, seems inappropriate. In any event, that opinion is based not upon Judiciary Law § 14, but upon the Rules of the Chief Administrator of the Courts and, referring to section 100.0 (D) of those rules (22 NYCRR 100.0 [D]), concludes that, because parent and subsidiary companies are treated separately and independently for purposes of contractual or tort liability, a judge who owns stock in a corporate party has an "economic interest" in that corporation, but not in any subsidiary, parent or related corporation. However, aside from its questionable logic and the fact that it ignores the de minimis requirement of section 100.0 (D) of those rules, such a general dispensation would not seem to apply to a wholly owned subsidiary such as Chase Manhattan Mortgage Corp., since an owner of JP Morgan Chase stock would have an

"economic interest" in Chase Manhattan Mortgage Corp., such interest being defined in section 100.0 (D) as ownership of a legal or equitable interest, "however small," in the affairs of a party. If a $1 billion mortgage were involved here or a $92 million verdict, as was the case in *Chase v FM Ins. Co. (supra)*, where the trial judge owned $250,000 worth of Chase stock, I think we would all agree that the outcome of this action might possibly affect the value of JP Morgan Chase stock. The fact that the subject mortgage is a mere $192,000 still runs afoul of the Chief Administrator's de minimis rule, i.e., "however small."

As to its concern about the possibly onerous burden on judges of investigating their interests in any corporate entities which might be related to a party before them, in this case the relationship of Chase Manhattan Mortgage Corp. to JP Morgan Chase is both obvious and conceded. Completely ignored by the majority is the obligation of a judge to "inform" herself about her personal financial interests and to make a "reasonable effort to keep informed" about the financial interests of her spouse (Code of Judicial Conduct Canon 3 [E] [2]; Rules of Judicial Conduct (22 NYCRR) § 100.3 [E] [2]), as well as the age-old stricture to avoid even an appearance of impropriety.

On the present record, other than Chase's speculative arguments in its respondent's brief about plaintiff's motives, there is no basis for sua sponte directing plaintiff and his counsel to show cause why a sanction should not be imposed upon them pursuant to part 130 of the Rules of the Chief Administrator. Such rules are specifically intended to sanction "frivolous" conduct. This is clearly not the case here. If Chase was offended by the caption or the inclusion of Justice Diamond's financial statement in the record on appeal, its remedy was to move to alter the caption and strike the offending portions of the record.

As to the issue of possible sanctions, the majority's sua sponte conclusions of impropriety are premature and, if there were any question of the motion court's ownership of Chase stock, which ownership is presently undisputed, the proper procedure and the simplest solution would be to remand the matter for a factual determination of that issue.

Reargument granted to the extent of recalling and vacating the unpublished decision and order of this Court entered on March 23, 2004 (Appeal Nos. 1918-1919) and substituting a new decision and order therefor. Concur—Mazzarelli, J.P., Ellerin, Friedman and Gonzalez, JJ.

Andrias, J., dissents as follows: I respectfully dissent and would deny reargument.

Initially, plaintiff, not defendant Chase, seeks reargument solely on the grounds that this Court improperly assumed jurisdiction to be a trier of fact and then repeatedly erred on the facts; that this Court disregarded written evidence of defects in the notice of foreclosure sale; and that, inasmuch as this Court acted as a de novo trier of fact, plaintiff should have an automatic appeal to the Court of Appeals. Counsel for Chase, other than noting that he represents "Chase Manhattan Mortgage Corp. (improperly named as JP Morgan Chase Bank in the above caption and hereinafter referred to as 'Chase')," does not object to the appellate caption, does not cross-move for any relief, and simply opposes plaintiff's motion on the ground that it seeks to raise issues (about lack of discovery) not previously argued and that it fails to establish that this Court overlooked or misapprehended relevant facts or misapplied controlling law. Chase merely asks that the motion be denied and does not ask for any sanctions based on frivolousness or otherwise.

To act as the nisi prius court and decide this motion as if it came directly to us sets an unfortunate precedent. In *Matter of Harkness Apt. Owners Corp. v Abdus-Salaam* (232 AD2d 309 [1996]), this Court took what I consider the proper corrective action in such a situation, viz., declaring that the nisi prius justice is without jurisdiction to act in respect to this matter and remanding the case to Supreme Court for disposition before a different justice. Thus, to the extent that the majority is now recalling and vacating its original decision, the state of appellate jurisprudence is better off. Nevertheless, on the present record, there is no basis for granting reargument. Moreover, for the majority to now use plaintiff's reargument motion as an opportunity to sua sponte find that plaintiff and his counsel may have acted improperly in unilaterally amending the caption, and supplementing the record to include documents not before the IAS court to raise a claim of statutory disqualification is both inappropriate and based upon pure conjecture. This Court should not, on plaintiff's motion for reargument, which is made on entirely different grounds, now attempt to ignore such statutory disqualification under the guise of finding such disqualification not properly raised for the first time on appeal.

Accordingly, inasmuch as plaintiff, as the moving party, has failed to demonstrate that this Court overlooked or misapprehended any of the legal or factual issues raised by him, the appropriate disposition is to simply deny plaintiff's motion without further ado.

