Ocean Bay RAD, LLC v Camacho (2025 NY Slip Op 25244)

[*1]

Ocean Bay RAD, LLC v Camacho

2025 NY Slip Op 25244

Decided on November 14, 2025

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 14, 2025
Civil Court of the City of New York, Queens County

Ocean Bay Rad, LLC, Petitioner-Landlord,

against
Kyla Camacho, KASEAN RAY, and JANE DOE, Respondents.

Index No. L&T 306585-23

Slochowsky and Slochowsky, LLP
Attorneys for Petitioner
Respondent Kyla Camacho, pro se
Respondent Kasean Ray, pro se

Logan J. Schiff, J.

RELEVANT BACKGROUND AND PROCEDURAL HISTORY
Petitioner Ocean Bay RAD, LLC ("Petitioner") commenced this licensee holdover proceeding against Kyla Camacho ("Respondent"), John Doe, and Jane Doe upon filing the Petition on April 18, 2023. It is undisputed that the tenant of record, Judith Rosario, passed away on March 7, 2022, and that Respondent, who alleges she was Ms. Rosario's adoptive daughter and biological niece, has remained in possession.
Respondent asserted a defense of succession rights to the tenancy and the Section 8 project-based voucher ("PBV") that was attached to the unit at the time of Ms. Rosario's death (see NYSCEF 14). Respondent's partner and father of her minor child, Kasean Ray, also appeared, and the Petition, caption, and all papers are hereby amended, on consent, to substitute him in place of John Doe.
The subject premises is part of a 24-building, 1,395-unit complex owned by the New York City Housing Authority ("NYCHA"). It previously operated as public housing and became semi-privatized in or around July 2016 under NYCHA's Permanent Affordability Commitment Together ("PACT") program.[FN1]
Ocean Bay RAD is the first of what are now 139 citywide public [*2]housing developments converted from an entirely public housing model to privately administered, publicly-owned housing. PACT is part of NYCHA's effort, according to its former CEO Shola Olatoye, to "provide our residents with the necessary repairs while also preserving public housing for future generations" by "leveraging private investment."[FN2]
All PACT projects have been converted from federally funded public housing through the Rental Assistance Program ("RAD"), which NYCHA describes as a "HUD [Department of Housing and Urban Development] initiative [that] allows NYCHA and other public housing authorities to convert Section 9 (traditional public housing) subsid[ies] to Section 8 project-based vouchers."[FN3]

HUD offers two pathways for the semi-privatization of public housing projects under RAD.[FN4]
One option is the conversion to privately administered affordable housing by utilizing building-wide, Section 8 project-based rental assistance subsidies ("PBRA"), a program subject to direct oversight by HUD as prescribed in the HUD Handbook and attendant regulations.[FN5]
The other option, and the one chosen by NYCHA for all current PACT projects, utilizes a PBV model, a program that is part of the Section 8 Housing Choice Voucher program. In PBV buildings, a private landlord is responsible for the collection of rent and the day-to-day operations, including maintenance of the premises, while the public housing authority administering the PBV contract, in this case NYCHA, is responsible for approving initial leases and administering all aspects of ongoing voucher eligibility pursuant to a promulgated Administrative Plan.[FN6]

Considering non-party NYCHA's statutory role in the oversight of PACT/RAD project-based Section 8 vouchers, this court advised the parties during pre-trial conferences that it was uncertain whether housing court had jurisdiction to entertain a succession defense. As a result, the trial was repeatedly adjourned to afford Respondent the opportunity to pursue a remaining family member grievance with NYCHA in the first instance (see, e.g. NYSCEF 11). Yet, on each adjourn date, Respondent returned without proof that she had filed any such application, claiming, credibly in this court's view, that NYCHA refused to communicate with her because the household's voucher was ported to a Section 8 apartment in Connecticut by her brother Lazarus Camacho in or around May 10, 2022, after her mother's death in March 2022, thereby precluding NYCHA from even the considering a succession application for a voucher it no longer administers.[FN7]

After multiple attempts, Respondent, who remains pro se despite repeated court referrals to the Office of Civil Justice for assigned counsel through the Universal Access to Counsel program, subpoenaed the leased housing division of NYCHA to appear and produce records in relation to her mother's tenancy post-RAD conversion. At a court conference on May 20, 2025, NYCHA employee Charisse Johnson appeared and produced the relevant records, including the standard-form, Section 8 project-based-voucher RAD, initial lease that was signed by the tenant of record, Ms. Rosario, on January 1, 2017, following the conversion. Ms. Johnson confirmed that the household's Section 8 voucher was ported to Connecticut by Lazarus Camacho on May 10, 2022, and that there is no longer any voucher or tenancy pursuant to which Respondent can succeed. Following this court appearance, the court issued an order scheduling a trial for July 21, 2025, and directing Respondent to submit a new succession application with NYCHA, or, alternatively, to pursue an Article 78 proceeding to compel NYCHA to consider her application to the extent she contended it would not even process her request prior to the trial, in which case the court would entertain a request for a stay of the housing court proceeding (see NYSCEF 14).
The parties returned on July 21, 2025, as which time Respondent produced no proof of a pending succession application or an Article 78 proceeding. Respondent stated that she had attempted to file an Article 78 petition in both Queens and New York counties, but that, in each instance, she was informed by court staff that such filing could only be effectuated after housing court issued a decision declining jurisdiction. As a result, the court conducted a trial commencing on July 21, 2025, and concluding on August 13, 2025.
THE TRIAL
Petitioner's first witness was Charisse Johnson, an employee of the NYCHA leased housing division. During Ms. Johnson's testimony, the court admitted the entire Section 8 file produced by NYCHA for the deceased tenant of record, Judith Rosario. The records show that, following the conversion of the building, an initial PBV RAD lease was executed by Ms. Rosario and Petitioner on January 1, 2017, with the only other household occupant listed being Respondent's son Lazarus Camacho. Ms. Johnson testified that that Ms. Rosario submitted, and NYCHA approved, a voucher transfer request form in November 2021, indicating her desire to [*3]move out of the premises. Ms. Johnson stated that the voucher was successfully ported out on May 10, 2022, two months after Ms. Rosario passed away on March 7, 2022, at the request of the remaining family member Lazarus Camacho. This, in effect, simultaneously afforded Mr. Camacho succession rights and the ability to port the Section 8 voucher to an apartment in Connecticut.
Ms. Jonhson testified that Respondent Kyla Camacho while not originally listed on the Section 8 household composition, was added as a conditional household member on November 14, 2019, but that she was no longer listed as part of the household at the time the voucher was ported out in 2022. Ms. Johnson testified that, while there was nothing technically stopping Respondent from submitting a succession application to NYCHA now and although she believed it would still be processed, it would likely be summarily denied without an evidentiary hearing given that Respondent was not a permanent member of the Section 8 household when her mother died.[FN8]

Petitioner's second and final witness was Joseph Figueroa, an employee of Wavecrest Management Group LLC, the registered managing agent for Ocean Bay RAD. He testified that Petitioner took over as the property manager and lessee under the PACT/RAD program in 2016, and that to his knowledge the deceased tenant of record of the subject apartment was Respondent's foster mother, Ms. Rosario. During Mr. Figueroa's testimony, the court admitted a death certificate for Ms. Rosario, dated March 7, 2022, and Ms. Rosario's initial lease with Ocean Bay RAD dated January 1, 2017, listing only Lazarus Camacho as an additional household member. Mr. Figueroa further testified that he would have no issue with Respondent taking over the apartment, but that NYCHA "determines everything," including all leases and accompanying Section 8 vouchers, and that he has no authority to give the apartment to Ms. Camacho without NYCHA's approval. He further stated that, pursuant to the lease and regulatory agreements between NYCHA and Ocean Bay RAD, all tenancies must include a project-based Section 8 voucher administered by NYCHA that is associated with the unit.
Respondent, Kyla Camacho, testified in rebuttal and in support of her succession claim, the sole defense raised to this holdover proceeding. Respondent, who is 29 years old, stated that she has lived in apartment continuously since birth. She testified that the tenant of record, Ms. Rosario, was her biological aunt and foster mother for many years, and that she was legally adopted in 2005 along with her biological younger brother Lazarus Camacho.
During Respondent's testimony, the court admitted a cell phone photo of the NYCHA public housing household composition for the subject unit in June 2015, a year prior to the conversion of the building to PACT/RAD, reflecting that Respondent was listed as the daughter of Ms. Rosario, along with several siblings and other household members, including Lazarus Camacho, her brother. Respondent testified that she has never moved out of the premises and had no idea why she was not listed as a member of the household on Ms. Rosario's first Section 8 lease with NYCHA, and that she had never seen a copy of this lease or authorized her removal [*4]from the household composition.
Respondent further testified that, after Hurricane Sandy in 2012, the entire household other than Respondent moved to Connecticut, including her brother Lazarus. Besides Respondent, only her mother, Ms. Rosario, maintained ties with the subject apartment, periodically returning to visit Respondent and continuing to hold herself out as the head of household to NYCHA, until she moved away full time in or around 2017 after being diagnosed with cancer. Respondent stated that her domestic partner and co-Respondent, Kasean Ray, moved in with her approximately ten years ago, and that they have an 8-year-old child together.
Respondent described her repeated efforts to transfer the lease to her own name after the PACT/RAD conversion. She stated that, between 2017 and 2022, she visited the management office, operated by Wavecrest, multiple times to ask them to make her the head of household, and that she also appeared and asserted succession rights in housing court. The court admitted, on judicial notice, the court file in the nonpayment proceeding LT-074516-18/QU for the subject unit, including a stipulation dated March 12, 2019, in which the proceeding was adjourned for Respondent to seek succession rights with NYCHA. Respondent testified that she appeared in court alone, as her mother was in Connecticut, and that ultimately the matter was resolved with the payment of the arrears. Respondent stated that, after the court appearance, her mother returned from Connecticut and went with her to the Wavecrest management office, sometime in 2019, to ask them to put the lease in her name; that they gave Wavecrest a range of documents in support of the request, including adoption records; and that her mother advised Wavecrest that she no longer lived in the apartment and wrote a letter in support. Respondent stated that she has since learned from the NYCHA subpoenaed documents that she was ultimately added to the household composition as a conditional household member in November 2019, and that she was never given an opportunity to become head of household or to take over the lease or Section 8 voucher. In fact, the subpoenaed Section 8 records reflect that Respondent, who never became a permanent household member despite NYCHA rules normally providing for this after one year, was removed once again from the household composition on September 20, 2021, based on a NYCHA internal notation that simply stated: "Tenant Not in Unit." When questioned by the court, Respondent stated that she had no idea why she was removed from household composition, and that she neither knew of this change nor authorized it. She further testified that she has no real relationship with her brother Lazarus, who is presently 25 years old, has barely spoken with him in years, and did know he had taken over her mother's Section 8 voucher before this proceeding was filed.
Respondent further testified that, after her mother died in March 2022, she again went directly to the management office to request a lease in her name and was told she would need to submit the request to NYCHA. She then went to NYCHA's office at Atlantic Avenue in Brooklyn in May 2022 and was advised that, as a non-household member, she had no right to the voucher or apartment and should simply wait for a court case.
Respondent's second witness was co-Respondent Kasean Ray. He testified that Respondent is his domestic partner, and that he has lived in the premises since 2015. Mr. Ray testified that he and Respondent went to NYCHA's office many times to seek succession rights but were always turned away because they "did not have the right paperwork." He testified that, when he moved into the premises, Respondent's mother Ms. Rosario was back and forth, and that she moved out permanently when her health started to decline in or around 2017 or 2018.
Mr. Ray recalled a time, shortly after Ms. Rosario permanently vacated the apartment, [*5]that Ms. Rosario and Respondent went to the Wavecrest management office to ask them to transfer the lease to Respondent's name. Mr. Ray testified that he went with them, and they met with managing agent employee and petitioner witness, Joseph Figueroa, and explained that Ms. Rosario, who was battling cancer, and her other children had moved full-time to Connecticut. Mr. Ray stated that they gave Wavecrest various documentary evidence, including social security cards, birth certificates, and adoption records, but that they never received a written decision as to the succession application. Mr. Ray testified that during the COVID-19 pandemic NYCHA's offices were physically closed for years, including in September 2021, when Respondent was removed from the Section 8 household composition, a fact they did not learn of until this court case; that that there was virtually no way to contact NYCHA or communicate with them from 2020-2022, or request any information; and that at no point was he or Respondent ever informed that Respondent had been removed from the Section 8 household.
ANALYSIS AND CONCLUSION
Petitioner proved its prima facie case in this licensee holdover upon the testimony of its managing agent and through the admission of the "Section 8 Voucher Assistance Project Based-RAD Lease" between the now-deceased tenant of record Judith Rosario and Petitioner Ocean Bay RAD dated January 1, 2017, (NYSCEF 15-16), Ms. Rosario's death certificate reflecting a date of death of Mary 7, 2022, and the 10-day notice to quit revoking the license afforded to Respondent by Ms. Rosario (see Saito v Doe, 71 Misc 3d 135 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]).
Respondent's sole defense, raised orally and memorialized in the court's order dated May 20, 2025 (NYSCEF 14), is that she is entitled to succeed to her adoptive mother's tenancy and entwined Section 8 project-based voucher in a NYCHA-owned building that has been semi-privatized pursuant to the PACT/RAD program.
Succession rights are conferred by statute, as is the case of most government-regulated housing (see, e.g. Matter of Jourdain v New York State Div. of Housing & Community Renewal, 159 AD3d 41 [2d Dept 2018]; Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d 649, 654 [2013]; Manhattan Plaza Assoc. v. DHPD, 8 AD3d 111 [1st Dept 2004]), or by contract (see Matter of Northridge Coop. Section III, Inc. v Bonilla, 2025 NY Slip Op 06062 [2d Dept 2025]; Carrano v Colon, 86 Misc 3d 1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2025]; Tom v Tom, 43 Misc 3d 144 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014]).
In units receiving federal project-based Section 8 benefits, which remain subject to Section 8 subsidies after the household vacates and must be re-rented to eligible applicants on a waiting list (see 24 CFR 983.251), the tenancy and subsidy are so intertwined that an occupant normally must demonstrate their eligibility to succeed to the subsidy to simultaneously succeed to the leasehold (see Davidson 1992 Assocs. v Corbett, 738 NYS 2d 813 [App Term, 1st Dept 2002]). Here, there is no basis for deviating from this rule, as neither the lease between Petitioner and the deceased tenant of record following the conversion of the premises from public housing, dated January 1, 2017 (NYSCEF 15-16), nor any federal regulation or regulatory agreement between Petitioner and NYCHA, in connection with the PACT/RAD program of which this court is aware, affords any contractual or other legal pathway for succession to a remaining occupant independent of the unit's project-based Section 8 voucher. Therefore, Respondent's right to succeed hinges on whether she can demonstrate entitlement to her late mother's voucher. [*6]This, in turn, raises a threshold question as to whether housing court has concurrent jurisdiction with NYCHA over succession determinations in public housing converted to project-based Section 8 vouchers through RAD, an inquiry for which there is no precise appellate precedent. As such, this court will look to appellate guidance in analogous contexts.
In entirely privately managed, multi-family buildings, subject to building-wide Section 8 project-based rental assistance payments ("PBRA"), a program that is distinct from government-supervised project-based vouchers, the HUD Handbook provides detailed, mandatory procedures for landlords administering these buildings, including with respect to succession rights determinations (see Marine Terrace Assoc. v Kesoglides, 44 Misc 3d 141 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014], citing HUD Handbook 4350.3).[FN9]
The HUD Handbook does not, however, offer any grievance process before HUD or other mechanism for administrative review of the decisions of these private actors. Therefore, state courts may review in-house, PBRA succession determinations in the context of eviction proceedings for compliance with federal regulations, such review being necessary to comport with principles of procedural due process (see id.; Williams & Georgia Towers HDFC v Green, 76 Misc 3d 127 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022]; Los Tres Unidos Assoc. LP v Colon, 45 Misc 3d 129 [App Term, 1st Dept 2014]; see generally Henry Phipps Plaza S. Assoc. Ltd., Partnership v Quijano, 45 Misc 3d 12 [App Term, 1st Dept 2014] [Schoenfeld, J., dissenting, noting that due process necessitates that a landlord comply with HUD regulations and the HUD Handbook prior to termination of a project-based Section 8 tenancy], reversed 137 AD 602 [1st Dept 2016] ["[P]roceeding dismissed with prejudice, based upon the reasoning set forth in the dissenting opinion of Schoenfeld, J., at Appellate Term."]).
In contrast to PBRA-subsidized buildings, in city-assisted, limited profit, cooperative corporations organized under Article II of the Private Housing Finance Law (the Mitchell-Lama Law), a state-based statutory scheme intended to provide affordable housing to low- and middle-income families (see Berkovich v Motovaya, 22 Misc 3d 91 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009] citing Private Housing Finance Law § 11), the appellate courts have held that the Department of Housing Preservation and Development ("HPD"), the agency supervising such projects, "is vested with exclusive jurisdiction to determine remaining family-member claims" (see Bedford Gardens Co. LP v Jacobwitz, 29 AD3d 501 [2d Dept 2006]). There is no provision in the statute authorizing the Mitchell-Lama program (see Private Housing Finance Law § 32 [describing the powers of the supervisory agency over Mitchell-Lama companies]) or HPD's implementing regulations (see 28 RCNY 3-02) that explicitly vests HPD with exclusive jurisdiction over succession rights determinations. Rather, the appellate courts' conclusion is derived from the fact that HPD is the statutorily empowered agency responsible for "oversight of the mandated waiting list procedures and its approval of tenancies, apartment transfers and applicant eligibility at Mitchell-Lama project (see 28 RCNY 3-02, 3-03)" (Wong v Gouverneur Gardens Hous. Corp., 308 AD2d 301, 304 [1st Dept 2003]). Pursuant to this mandate, HPD has implemented an administrative process for succession determinations that, only after an exhaustion of administrative remedies, may be reviewed by via an Article 78 proceeding in state court for rational basis, a regulatory scheme that "evince[s] a legislative intent to have such cases [*7]determined by the agency in the first instance" (id. at 304-305, citing Sohn v Calderon, 78 NY2d 755 [1991]; see also Brighton House v Novick, 2003 NY Slip Op 51201 [App Term, 2d Dept, 2d & 11th Jud Dists 2003]; Lindsay Park Hous. Corp v Grant, 190 Misc 2d 777 [App Term, 2d Dept, 2d & 11th Jud Dists 2001]; Rochdale Vil., Inc. v Goode, 16 Misc 3d 49 [App Term, 2d Dept, 2d & 11th Jud Dists 2007] [concluding the same rule of exclusive jurisdiction over succession determinations should apply in state-assisted projects]).
With respect to buildings enrolled in the project-based Section 8 voucher program, such as the subject premises, the overarching regulatory framework reflects a level of administrative oversight that more closely resembles Mitchell-Lama housing than privately administered PBRA buildings. Project-based vouchers are not subject to the HUD Handbook and, instead, fall within the umbrella of the Housing Choice Voucher ("HCV") program, which encompasses both portable vouchers and project-based vouchers (see 24 CFR 982.1).[FN10]
HUD has implemented no specific regulations dictating the manner in which the local Section 8 contract administrator, classified as the supervising Public Housing Agency ("PHA") (see 24 CFR 982.1[a][1]) must make remaining family member determinations with respect to Section 8 vouchers, (see Manhattan Plaza Assoc. v. DHPD, 8 AD3d 111 [1st Dept 2004]). Instead, HUD regulations direct the relevant supervising PHA to implement an Administrative Plan encompassing all aspects of Section 8 voucher eligibility, including initial admission, ongoing eligibility, and termination of assistance "in accordance with HUD regulations and requirements" (24 CFR 982.54; see also 24 CFR 982.551-522) and affords the PHA significant discretion in fashioning the appropriate procedures for determining succession rights (see Manhattan Plaza Assoc., 8 AD3d 111; Matter of Evans v Franco (93 NY2d 823 [1999]). In buildings subject to project-based vouchers, the PHA is required to maintain a waiting list of eligible applications in the event of a vacancy (see 24 CFR 983.251), and to ensure no more than 20% of its total portfolio of Housing Choice Vouchers are encompassed by units in PBV buildings (see 24 CFR 983.6). The PHA is also responsible for approving voucher transfer applications, which, unlike in PBRA buildings where the subsidy is irrevocably tied to the unit, are authorized after one year of occupancy, with permission from the PHA, after which an eligible household on the waiting list is assigned the unit and given a new Section 8 project-based voucher from the PHA's available pool of vouchers (see 24 CFR 983.261; 24 CFR 983.251).
Consistent with the federal regulations, NYCHA has implemented an Administrative Plan that sets forth the governing procedures for project-based voucher succession determinations, including in PACT/RAD projects.[FN11]
The successions regulations, which are identical for both portable and project-based vouchers, including those in the PACT/RAD program, set forth detailed procedures for seeking succession, entitle applicants to an informal hearing in accordance with federal regulations (see Housing Choice Voucher Program [*8]Administrative Plan at ch. V [A], Appendix B, supra n. 6; 24 CFR 982.555), and are subject to judicial review via an Article 78 petition (see e.g. Matter of Evans v Franco, 93 NY2d 823 [1999]). The Administrative Plan further provides that only NYCHA may determine succession rights in the first instance, not the private landlords administering other aspects of PACT/RAD buildings, or, implicitly, housing court (see Housing Choice Voucher Program Administrative Plan, ch. V [A], Appendix B at 89, supra n. 6).
In sum, NYCHA's statutory role in administering all aspects of subsidy eligibility in the project-based Section 8 voucher context, including initial application screening, termination of assistance, transfer of vouchers, maintenance of the waiting list for vacant units, and, most pertinent here, remaining family member succession determinations, which are subject to judicial review, is as extensive as that of HPD's in the Michell-Lama context (cf. Wong 308 AD2d at 304; Brighton House v Novick, 2003 NY Slip Op 51201; Lindsay Park Hous. Corp v Grant, 190 Misc 2d 777). Accordingly, this court concludes that NYCHA has exclusive jurisdiction over PBV succession determinations, including in public housing converted via the PACT/RAD program. Therefore, Respondent's "succession-rights defense cannot be entertained in this summary proceeding" (St. Marks Place Hous. Co., Inc. v Moultrie, 34 Misc 3d 140 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]; but see Pact Renaissance Collaborative LLC v Crespo, 2025 NY Slip Op 25185 [Civ Ct, NY Co 2025]; Twin Parks Owner LLC v McKenley, 86 Misc 3d 1231 [Civ Ct, Bronx Co 2025]).[FN12]

That Respondent may not interpose a succession defense does not necessitate her eviction. Notwithstanding the legislative preference for the expeditious determination of summary proceedings, a stay is appropriate where housing court is "without authority to grant the relief sought" (Scheff v 230 E. 73rd Owners Corp., 203 AD2d 151 [1st Dept 1994]; see also 5201 Snyder Ave. Assocs. LP v Clarke, 32 Misc 3d 1203 [Cit Ct, NY Co 2011]). A stay to afford a resident of a PACT/RAD project a meaningful opportunity to seek succession before NYCHA [*9]will often be justified given the important remedial role that regulations affording succession rights serve in "preventing dislocation of long-term residents due to the vacatur of the head of household" (Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d 649 [2013]).
Here, the court has repeatedly adjourned this matter to enable Respondent to pursue her succession claim with NYCHA prior to the issuance of a potentially premature housing court judgment. However, despite multiple adjournments over the two-year duration of this case, to date, Respondent has offered no proof of a pending succession application or that she has filed an Article 78 petition seeking to direct NYCHA to render a determination, a procedure available to compel administrative review (see Matter of Highland Hall Apts., LLC v New York State Div. of Hous. & Community Renewal, 66 AD3d 678 [2d Dept 2009]). Nor is Respondent even seeking a pre-judgment stay at this juncture. Rather, during the trial she asked this court to make a final ruling as to its jurisdiction so that she may then pursue litigation in Supreme Court, which she claims will not accept her filing while the housing court proceeding is pending. Accordingly, as Respondent has not demonstrated any cognizable defenses to this proceeding, Petitioner is hereby awarded a possessory judgment as against all Respondents.
While the warrant of eviction will issue forthwith, the court will issue a post-judgment stay of execution through March 31, 2026, to afford Respondent an opportunity to seek redress with NYCHA, given her colorable assertion of succession rights. Under federal regulations and NYCHA's rules, a party seeking PBV succession in a PACT/RAD building is entitled to, at a minimum, an informal hearing (see Housing Choice Voucher Program Administrative Plan, ch. XXIX [B][7][b], Appendix B at 92, supra n. 6; 24 CFR 982.555). Although normally NYCHA has the discretion to summarily deny a succession application for occupants not listed on the Section 8 voucher household composition form (see Matter of Evans v Franco, 93 NY2d 823 [1999]), an evidentiary hearing may be warranted here given Respondent's credible assertions that NYCHA divested her of succession rights by incorrectly awarding the voucher to her brother in 2022, when he had not been a genuine member of the household for over a decade. Respondent was listed as a permanent household member on the NYCHA public housing household composition in 2015 and was seemingly only removed during the semi-privatization of the building via the initial PBV lease on January 1, 2017, according to Respondent without any notice. Under NYCHA procedures applicable to both public housing and the Section 8 Housing Choice Voucher program, a permanent household member generally may not be removed without their consent or without proof that they have vacated, and such unauthorized removal will not defeat an otherwise valid succession claim (see Matter of Figueroa v New York City Hous. Auth., 141 AD3d 468 [1st Dept 2016]). To the extent Respondent's claims suggest that NYCHA may not have implemented appropriate safeguards for ensuring permanent residents were not incorrectly removed from household compositions as part of the PACT/RAD conversion process, such practice could run afoul of HUD rules specifically affording all RAD residents, not merely tenants, advanced notice of any adverse action and the right to a hearing, and may implicate Respondent's due process rights to adequate notice (see Greene v Carson, 256 F. Supp. 3d 411 [SDNY 2017]).[FN13]

Nor can Respondent be said to have unreasonably delayed in seeking succession (cf. Matter of 901 Bklyn Realty, LLC v Manigat, 239 AD3d 640 [2d Dept 2025]). The record reflects that Respondent sought a remaining family member determination from both NYCHA and Petitioner on numerous occasions, including after her mother permanently vacated in 2017 following her cancer diagnosis, via a stipulation in housing court dated March 12, 2019, and shortly thereafter through the submission of documentation to NYCHA with assistance from the managing agent. While these efforts resulted in her being added as a conditional household member in November 2019, she was, once again, inexplicably removed from the household composition on September 20, 2021, during the COVID-19 pandemic when NYCHA's was still largely operating almost entirely virtually, based on a NYCHA internal notation that she no longer resided in the unit, which Respondent claims was incorrect and effectuated without her knowledge. As a result, her brother, who Respondent alleges had not resided in the premises since 2012, ported the household's voucher to Connecticut in 2022, months after their mother, the head of household, died. If these claims are ultimately established at a hearing, allowing the household's voucher to remain tied to an apartment in Connecticut, paying the rent of an individual that no longer lived in the apartment at the time of the PACT conversion in 2016, rather than with a household member who has continuously resided in the premises her entire life and was listed on the household composition prior to conversion, would undermine the purpose of succession regulations, which are designed to prevent displacement and "encourage family cohesion" (Manhattan Plaza Assoc. v. DHPD, 8 AD3d 111 ([1st Dept 2004)]). Such a result—the loss of life-long housing that Respondent would manifestly be entitled to had the conversion from public housing never occurred—would also contravene the public promise NYCHA made when Ocean Bay RAD was the first building to be semi-privatized via PACT that current residents would not be adversely impacted by the conversion.[FN14]

Accordingly, execution of the warrant is stayed through March 31, 2026, provided Respondent submits a written remaining family member grievance/succession rights request to the NYCHA leased housing office located at 90 Church Street, New York, New York 10007, annexing to the application a copy of this decision, by mail and in person no later than January 9, 2026. Respondent must file proof of same with this court with seven days of submission to NYCHA, or Petitioner may move by order to show cause to accelerate the execution of the [*10]warrant. If Respondent receives an adverse decision from NYCHA, Respondent must promptly commence an Article 78 challenge in Supreme Court within 30 days of receipt and file proof of such with this court, or Petitioner may move to lift the stay and accelerate the execution of the warrant. In the event Respondent's application for succession remains pending as of March 31, 2026, whether at NYCHA or by virtue of a pending Article 78 petition, Respondent must move by order to show cause before this court for a further stay of execution of warrant. The earliest execution date after which Petitioner may serve a marshal's notice of eviction as per law, in the absence of an acceleration order, will be April 1, 2026.
In the event Respondent ultimately prevails and is afforded succession rights to her mother's section 8 voucher and made the new voucher head of household, execution of the warrant will be permanently stayed, as per NYCHA policies and the lease with the deceased tenant of record. Respondent will then be entitled to continued possession of the premises (see Housing Choice Voucher Administrative Plan, ch. XXIX [b], supra n. 6). The court further notes that Petitioner has consistently taken the position it has no objection to Respondent's occupancy, so long as her tenancy and voucher are approved by NYCHA, and the unit is receiving Section 8 rental assistance benefits.
This constitutes the decision and order of the court.
Dated: November 14, 2025
Queens, New York
Hon. Logan J. Schiff, J.H.C.

Footnotes

Footnote 1:See New York City Housing Authority, Rental Assistance Demonstration (July 28, 2016), available at https://www.nyc.gov/assets/nycha/downloads/pdf/RAD_Bayside_Resident_Meeting_27_July_2016_FINAL_EN.pdf (last accessed Nov. 14, 2025); New York City Housing Authority, 2016 Meetings and Presentations Archive, https://www.nyc.gov/site/nycha/about/nycha-rad-archive.page (last accessed Nov.14, 2025).

Footnote 2:See New York City Housing Authority, Press Release (June 19, 2017), available at https://www.nyc.gov/site/nycha/about/press/pr-2017/bayside-apartments-20170619.page (last accessed Nov. 14, 2025; New York State Housing Authority, PACT Projects & News, https://www.nyc.gov/site/nycha/about/pact/pact-projects-news.page (last accessed Nov. 14, 2025).

Footnote 3:New York City Housing Authority, PACT-RAD Scattered Sites in Brooklyn and Manhattan, available at https://www.nyc.gov/assets/nycha/downloads/pdf/PACT-RAD-2018-Bundles-External-Fact-Sheet.pdf (last accessed Nov. 14, 2025).

Footnote 4:U.S. Department of Housing and Urban Development Office of Multifamily Housng & Public and Indian Housing, Rental Assistance Demonstration: Guide to Choosing Between Project-Based Vouchers and Project-Based Rental Assistance for Public Housing Conversation (Apr. 2025), available at https://hudgov.sharepoint.com/sites/OGrp-Recap/Shared Documents/General/Program Administration and Policy/RAD for Public Housing/RAD PBV v. PBRA Comparison Guide 2025.02.14 - Final (last accessed Nov. 14, 2025).

Footnote 5:See United States Department of Housing and Urban Development, Rental Assistance Demonstration Conversion Guide for Public Housing Agencies, available at https://www.novoco.com/public-media/documents/hud-rad-conversion-guide-2012.pdf (last accessed Nov. 14, 2025); U. S. Department of Housing and Urban Development Handbook 4350.3 REV-1, ch.2, available at https://www.hud.gov/sites/documents/43503hsgh.pdf (last accessed Nov. 14, 2025).

Footnote 6:New York City Housing Authority Housing Choice Voucher Administrative Plan, ch. XXIX, available at https://www.nyc.gov/assets/nycha/downloads/pdf/hcpvadministrative.pdf (last accessed Nov. 14, 2025).

Footnote 7:Federal regulations and NYCHA rules allow a household to transfer a project-based voucher, including in PACT projects, to another building where Section 8 benefits are accepted, including out of state, and contemplate only one voucher per family (see 24 CFR 983.261; 24 CFR 982.302).

Footnote 8:Under NYCHA rules, conditional household members normally become permanent after one year, though, for reasons that are unclear, this did not happen in this case as Respondent, who was added in 2019, was still listed as conditional when she removed from the voucher household composition in 2021 based on the records produced (see Housing Choice Voucher Program Administrative Plan supra n.6 at Appendix. B [A-B]).

Footnote 9:Rental Assistance Demonstration: Guide to Choosing Between Project-Based Vouchers and Project-Based Rental Assistance for Public Housing Conversion supra n 4.

Footnote 10:As HUD notes on its website: "Project-based vouchers (PBVs) are a component of a public housing agency's (PHA's) Housing Choice Voucher (HCV) program. PHAs are not allocated additional funding for PBV units; the PHA uses its tenant-based voucher funding to allocate project-based units to a project"(see U.S. Department of Housing and Urban Development, Project-Based Vouchers, available at https://www.hud.gov/helping-americans/housing-choice-vouchers-project#close (last accessed Nov 14, 2025).

Footnote 11:See generally Housing Choice Voucher Program Administrative Plan supra n 6.

Footnote 12:Even if housing court could exercise jurisdiction over PBV succession determinations in certain instances, it would not be appropriate here, as it is undisputed that the voucher attached to the unit was ported to Connecticut in May 2022 with NYCHA's approval, and that Respondent's brother is now the voucher's head of household. As federal law and regulations only contemplate one voucher per family (see 42 USC 1437a; 24 CFR 982.302), and neither the PACT/RAD lease in evidence, nor federal regulations offer any pathway for succession independent of a remaining family member's entitlement to the project-based voucher, there is seemingly no longer any legal mechanism through which Respondent may assert a succession claim in court at this juncture (see generally 518 West 134th St. Tenants Ass'n v Calderon, 181 Misc 2d 216 [App Term, 1st Dept 1999]). Rather, Respondent's only plausible basis for claiming possession of the subject apartment requires clawing back the Section 8 voucher presently administered in Connecticut via a reversal of NYCHA's determination to allow the voucher port out, a challenge to an agency decision that cannot be collaterally attacked in housing court (see Bedford Gardens Co. LP v Jacobwitz, 29 AD3d 501 [2d Dept 2006]). Furthermore, any such administrative proceeding would necessarily involve Respondent's brother, who is not a party to this eviction matter, has a vested interest in the voucher, and must be put on notice to comport with due process.
Footnote 13:See U. S. Department of Housing and Urban Development, Rental Assistance Demonstration—Final Implementation (Sept. 5, 2019) at 65, available at https://www.hud.gov/sites/dfiles/Housing/documents/H-2019-09-PIH-2019-23_RAD_Notice%20Rev4_20190905.pdf (last accessed Nov. 14, 2025)([mandating notice and an opportunity for an informal hearing in RAD-converted projects by "the contract administrator in accordance with RAD PBV requirements [for any actions] that adversely affect the resident's rights, obligations, welfare, or status," including prior to commencement of an eviction proceeding]; see also Glendower Group v Martin, 2025 LX 45878 [Super Ct Apr. 4, 2025, No. : NHH-CV24-6023272-S]).

Footnote 14:New York City Housing Authority, Permanent Affordability Commitment Together (PACT), available at https://www.nyc.gov/assets/nycha/downloads/pdf/rad-round3-en.pdf (last accessed Nov. 14, 2025); New York City Housing Authority, Fact Check: Top 5 Myths About RAD (Rental Assistance Demonstration), available at https://www.nyc.gov/assets/nycha/downloads/pdf/rad-top-5-myths-fact-check.pdf (last accessed Nov, 14, 2025).